1  JOSEPH W. COTCHETT (SBN 36324)
   jcotchett@cpmlegal.com
2  EMANUEL B. TOWNSEND (SBN 305373)
   etownsend@cpmlegal.com
3  TAMARAH P. PREVOST (SBN 313422)
   tprevost@cpmlegal.com
4  **COTCHETT, PITRE & McCARTHY, LLP**
   840 Malcolm Road
5  Burlingame, CA 94010
   Telephone:  (650) 697-6000
6  Facsimile:  (650) 697-0577

7  *Attorneys for Defendants Masai Ujiri, Toronto*
   *Raptors/Maple Leaf Sports & Entertainment*

8

9

10

11              **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13                    **OAKLAND DIVISION**

14

15  **ALAN STRICKLAND**, an individual; and        Case No. 4:20-cv-000981-YGR
    **KELLY STRICKLAND**, an individual,
16                                                **REPLY IN SUPPORT OF MOTION FOR**
                     Plaintiffs,                  **LEAVE TO FILE AMENDED JOINT**
17                   v.                           **ANSWER AND COUNTERCLAIM OF**
                                                  **UJIRI**
18  **1. MASAI UJIRI**, an individual;
                                                  Date:        Tuesday, September 22, 2020
19  **2. TORONTO RAPTORS**, a business entity;    Time:        2:00 p.m.
                                                  Courtroom:   1, 19th Floor
20  **3. MAPLE LEAF SPORTS &**                    Judge:       Hon. Yvonne Gonzalez Rogers
       **ENTERTAINMENT**, a business entity;
21
22  **4.  NATIONAL BASKETBALL**
        **ASSOCIATION, INC.**; and DOES 1
23      through 100, inclusive

24                  Defendants.

25

26

27

28

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED JOINT ANSWER AND**
**COUNTERCLAIM OF UJIRI**; Case No. 4:20-cv-000981-YGR

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ........................................................................................................ 1

    A.      Defendants Have Satisfied Both Rule 15(a) and Rule 16(b)'s Standards ..................... 1

        1.      Defendants Acted Diligently Under Rule 16(b) Based on Newly Produced Evidence ................................................................................................................ 2

    B.      Defendants' Motion Should be Granted Because, Under Rule 15(a), Justice So Requires ........................................................................................... 5

        1.      Defendants Have Not Brought this Motion in Bad Faith ................................... 5

        2.      There Was No Undue Delay in Filing Defendants' Motion .............................. 8

        3.      Any Prejudice Suffered by Plaintiffs Does Not Warrant Denying Defendants' Motion .................................................................................................................. 8

III.    CONCLUSION .................................................................................................... 10

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED JOINT ANSWER AND COUNTERCLAIM OF UJIRI**; Case No. 4:20-cv-000981-YGR

i

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page (s)</u>

3

**Cases**

4

*Bowles v. Reade*,
5
   198 F.3d 752 (9th Cir. 1999) ......................................................................................8

6

*Byrd v. Guess*,
   137 F.3d 1126 (9th Cir. 1998) ....................................................................................9
7

*DCD Programs, Ltd. v. Leighton*,
8
   833 F.2d 183 (9th Cir. 1987) ......................................................................................8

9

*Foman v. Davis*,
10
   371 U.S. 178 (1962).....................................................................................................5

11

*Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist.*,
   No. CIV.S-05-583LKKGGH, 2006 WL 3733815 (E.D. Cal. Dec. 15, 2006)...........2, 9

12

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*,
13
   2006 U.S. Dist. LEXIS 94421 (E.D. Cal. Dec. 15, 2006) ...........................................9

14

*Graham v. Connor*,
15
   490 U.S. 386 (1989).....................................................................................................4

16

*Griggs v. Pace Am. Grp., Inc.*,
   170 F.3d 877 (9th Cir. 1999) ...................................................................................5, 6
17

*Jackson v. Laureate, Inc.*,
18
   186 F.R.D. 605 (E.D. Cal. 1999) ...............................................................................2

19

*James ex rel. James Ambrose Johnson, Jr., 1999 Trust v. UMG Recordings, Inc.*,
20
   No. C 11-1613 SI, 2012 WL 4859069 (N.D. Cal. Oct. 11, 2012)...............................8

21

*Janicki Logging Co. v. Mateer*,
   42 F.3d 561 (9th Cir. 1994) ......................................................................................10
22

*Johnson v. Mammoth Recreations, Inc.*,
23
   975 F.2d 604 (9th Cir. 1992) ...............................................................................2, 5, 10

24

*Lopez v. Comcast Cable Communs. Mgmt. LLC*,
   2016 U.S. Dist. LEXIS 5517 (N.D. Cal. Jan. 15, 2016) .............................................9
25

*Lopez v. Smith*,
26
   203 F.3d 1122 (9th Cir. 2000) ....................................................................................9

27

*M.H. v. County of Alameda*,
28
   2012 U.S. Dist. LEXIS 168412, 2012 WL 5835732 (N.D. Cal. Nov. 16, 2012) ...........2

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED JOINT ANSWER AND COUNTERCLAIM OF UJIRI**; Case No. 4:20-cv-000981-YGR       ii

*Macias v. Cleaver*,
   No. 1:13-CV-01819-BAM, 2016 WL 8730687 (E.D. Cal. Apr. 8, 2016)..............................*passim*

*Miller v. Safeco Title Ins. Co.*,
   758 F.2d 364 (9th Cir. 1985) ................................................................................................2

*Owens v. Kaiser Found. Health Plan, Inc.*,
   244 F.3d 708 (9th Cir. 2001) ................................................................................................5

*s., Coleman v. Quaker Oats Co.*,
   232 F.3d 1271 (9th Cir. 2000) ..............................................................................................9

*Serpa v. SBC Telecomms., Inc.*,
   318 F. Supp. 2d 865 (N.D. Cal. 2004) ..................................................................................8

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
   715 F.3d 716 (9th Cir. 2013) ..............................................................................................10

*Zivkovic v. S. California Edison Co.*,
   302 F.3d 1080 (9th Cir. 2002) ............................................................................................10

**Rules**

Federal Rules of Civil Procedure
   Rule 13(a) ..............................................................................................................................9
   Rule 15 ...........................................................................................................................1, 5, 9
   Rule 15(a) .................................................................................................................1, 5, 7, 10
   Rule 15(a)(1)(A) ....................................................................................................................4
   Rule 16 ...........................................................................................................................1, 2, 4
   Rule 16(b) .....................................................................................................................1, 2, 5
   Rule 16(b)(4) ..........................................................................................................................1

Local Rule 5-1 ......................................................................................................................5

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED JOINT ANSWER AND COUNTERCLAIM OF UJIRI**; Case No. 4:20-cv-000981-YGR

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Plaintiffs oppose this motion to undermine Defendants' legitimate, meritorious legal claims by relying on procedural rules to preclude them. However, courts interpreting these federal rules strongly favor permitting meritorious claims to proceed, particularly when they raise serious violations of Constitutional rights, are brought in good faith, and arise after <u>new, critical evidence is produced</u>. Each of these circumstances support granting Defendants' motion here.

On <u>July 17, 2020</u>, Plaintiff Alan Strickland produced body camera footage revealing for <u>the first time</u>, clearly and in high definition, that he forcefully shoved Mr. Ujiri twice without any verbal or physical provocation. Less than a month later, on <u>August 18, 2020</u>, Defendants filed a motion to add a counterclaim. While Plaintiffs assert general disagreement with now being cross-complained against in this case, they have not stated grounds for either prejudice or bad faith such that Defendants' motion to add a counterclaim should be denied. As such, the motion should be granted.

**II.      ARGUMENT**

Plaintiffs claim Defendants lack "good cause" to amend the scheduling order under Rule 16(b)(4). They further argue that Defendants' motion should be denied under Rule 15(a) because it was brought in bad faith, after undue delay, and permitting Defendants to assert a counterclaim would cause Plaintiffs prejudice. These contentions lack merit and do not justify denying Defendants' motion.

**A.      Defendants Have Satisfied Both Rule 15(a) and Rule 16(b)'s Standards**

A request to amend a pleading after the Court's deadline for doing so implicates both Rule 15 and 16. Rule 16(b) governs the issuance and modification of pretrial scheduling orders, and Rule 15(a) governs amendment of pleadings. Fed. R. Civ. P. 16(b) and 15(a).

The Rule 16(b) "good cause" standard should be applied first, to modify the scheduling order as necessary, then the "when justice so requires" standard of Rule 15(a) is applied. *See Macias v. Cleaver*, No. 1:13-CV-01819-BAM, 2016 WL 8730687, at *2–3 (E.D. Cal. Apr. 8, 2016), citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608-09 (9th Cir. 1992).

//

1

2

### 1.   Defendants Acted Diligently Under Rule 16(b) Based on Newly Produced Evidence

When a party requests changes to the scheduling order, the Court's inquiry focuses on that party's diligence. *See, e.g., Johnson*, 975 F.2d at 609. On occasion, courts apply a more detailed three-part test: establishing good cause by showing (1) it diligently assisted with creation of the Rule 16 order, (2) circumstances beyond its control and anticipation prevented compliance with the order, and (3) after it became apparent a new schedule was needed, the party promptly sought relief. *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999).

As a preliminary matter, Defendants do not believe major modifications to the scheduling order are necessary should the Court grant this motion. Discovery is in its infancy and no depositions have been taken by any party. Trial is over fourteen months away, beginning on December 13, 2021, and fact and expert discovery deadlines are also several months away, on April 2, 2021 and June 4, 2021, respectively. Dkt. No. 30. Defendants simply ask to amend their answer after the Court's deadline to do so, and there is good cause to grant this request.

Good cause may be demonstrated by a change in circumstance or newly discovered facts. *See Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist.*, No. CIV.S-05-583LKKGGH, 2006 WL 3733815, at *5 (E.D. Cal. Dec. 15, 2006) (allowing amendment under Rule 16(b) when the amendment was prompted by new evidence obtained through discovery). Allowing parties to amend a pleading based on information obtained through discovery is common and well established. *Id.* at 15-16 (collecting cases where court granted leave to amend based on "new information revealed through discovery"). And similarly, discovery of new evidence is often sufficient to satisfy the good cause standard. *See M.H. v. County of Alameda*, 2012 U.S. Dist. LEXIS 168412, 2012 WL 5835732 (N.D. Cal. Nov. 16, 2012) (finding good cause for a plaintiff to amend a complaint to add defendants if the identities of those defendants were unknown prior to discovery). At its core, the decision to modify a pretrial scheduling order is "one of broad discretion." *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir. 1985).

Here, Defendants first obtained Mr. Strickland's body camera footage on July 17, 2020. *See* July 17, 2020 email from Mastagni Holstedt, A.P.C. to Cotchett, Pitre & McCarthy, LLP attached as

1    **Exhibit 3** to the Declaration of Emanuel B. Townsend ("Townsend Decl."), filed concurrently

2    herewith. This critical piece of evidence, along with other evidence produced in this litigation,

3    crystallized the incident as one of unreasonable force. Townsend Decl. ¶¶ 4-12.

4         The body camera footage contains close-up, high definition video and audio of the entire

5    encounter between Mr. Ujiri and Mr. Strickland. This footage provides a new perspective of the

6    encounter that <u>includes audio</u> confirming Mr. Ujiri also was not verbally aggressive towards Mr.

7    Strickland. Rather, the footage shows that after Mr. Strickland forcefully pushed Mr. Ujiri the first time

8    and cursed at him, Mr. Ujiri calmly asked Mr. Strickland why he had pushed him and calmly told Mr.

9    Strickland he was the President of the Toronto Raptors. *See* Body Camera Footage included as Exhibit

10   1 to Defendant Masai Ujiri's Proposed Counterclaim, Dkt. No.35.

11        In contrast, the security footage Defendants submitted to the Court on May 11, 2020 (and so

12   strongly relied upon by Plaintiffs in their opposition) does not contain audio or high definition video.

13   Rather, that video provides footage taken from a significant distance from the encounter, from a birds-

14   eye-view vantage point. *See* previously submitted security footage embedded via sharefile link to

15   **Exhibit 1** to the Townsend Decl.). The security footage does show Mr. Ujiri was not the initial

16   aggressor and that he did not act physically aggressive towards Mr. Strickland until Mr. Strickland

17   pushed him twice.

18        But the body camera footage -- produced approximately three weeks before Defendants filed

19   the instant motion -- reveals that despite Mr. Ujiri's calm and professional response to Mr. Strickland's

20   initial use of unnecessary and excessive force, Mr. Strickland again forcefully shoved Mr. Ujiri as Mr.

21   Ujiri attempted to show Mr. Strickland the credential he had in his hand.

22        The new, highly credible perspective of the encounter supplied by the body camera footage

23   confirms Mr. Strickland's egregious conduct against Mr. Ujiri was not undertaken in response to any

24   act of *physical* <u>or</u> *verbal* aggression by Mr. Ujiri. Rather, it was the product of unreasonable, excessive

25   force.

26        The body camera footage also shows just how incredibly close eyewitnesses Greg Weiner,

27   Nancy Pike, and Andrew Miller were standing to Mr. Strickland and Mr. Ujiri during the encounter.

28   As noted in Defendants' proposed counterclaim, each of these witnesses has provided a declaration

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED JOINT ANSWER AND
COUNTERCLAIM OF UJIRI**; Case No. 4:20-cv-000981-YGR                                3

1    under penalty of perjury stating Mr. Ujiri did not strike Mr. Strickland in the face during the encounter,

2    supporting Defendants' claim. Mr. Ujiri's proposed counterclaims for excessive force are evaluated

3    based on the totality of the circumstances,[1] and by supporting his allegations with close-up, high

4    definition video and audio of the encounter and location of the eyewitnesses, the body camera footage

5    provides critical evidence of the complete set of circumstances at play during Mr. Ujiri's brief

6    encounter with Mr. Strickland. As such, it was prudent and reasonable for Mr. Ujiri to bring his

7    affirmative claims after he had the benefit of obtaining the illuminating body camera footage. Mr.

8    Ujiri's counterclaims should not be barred due to lack of diligence or delay. To the contrary: this

9    footage strengthens his claims, and reveals they were legitimately brought for a proper purpose.

10        Lastly, it is undisputed that the evidence forming the basis for Defendants' counterclaim was

11    only obtained after the deadline to amend pleadings had passed. The deadline for Defendants to respond

12    to Plaintiffs' complaint was April 2, 2020. Defendants then had 21 days, until April 23, 2020, to

13    permissively amend their answer to assert a counterclaim. *See* Rule 15(a)(1)(A). Plaintiffs produced

14    the body camera video footage on July 17, 2020, along with several other pieces of groundbreaking

15    evidence and several thousand pages of documents. Townsend Decl., **Ex. 3; ¶¶** 4-12. Defendants

16    simply could not have amended their pleadings by the permissive deadline set by the Federal Rules.

17    And the Court's Case Management and Pre-Trial Order, dated May 11, 2020, also predated the

18    production of this critical evidence; therefore, Defendants could not have previewed this issue for the

19    Court at that time. *See* Dkt No. 30.

20        In sum, Defendants diligently reviewed this evidence and filed their instant motion on August

21    18, 2020, just over three weeks after receiving the body camera footage and other critical evidence. *See*

22    Townsend Decl. ¶¶ 4-12. This diligence clearly satisfies the good cause standard. *See Macias v.*

23    *Cleaver*, No. 1:13-CV-01819-BAM, 2016 WL 8730687, at *4 (E.D. Cal. Apr. 8, 2016) (finding the

24

25

---

26    [1] *See* District Courts of the Ninth Circuit, Model Civil Jury Instruction No. 9.25 ("Under the Fourth
Amendment, a police officer may use only such force as is 'objectively reasonable' under all of the

27    circumstances."); *Graham v. Connor*, 490 U.S. 386, 397 (1989) ("[T]he 'reasonableness' inquiry in
an excessive force case is [made] in light of the facts and circumstances confronting them"). Such

28    analysis must involve "careful attention to the facts and circumstances of each particular case." *Id*. at
396.

movant established "good cause" under Rule 16 to seek leave to modify the scheduling order based on newly discovered evidence).

### B.   Defendants' Motion Should be Granted Because, Under Rule 15(a), Justice So Requires

Once the movant satisfies its burden to establish good cause under Rule 16(b), the Court will then consider the permissibility of amendment under Rule 15. *Johnson*, 975 F.2d at 608. As Plaintiffs concede, in the Ninth Circuit, Rule 15 is applied with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). However, Plaintiffs nonetheless argue this motion should be denied for Defendants' purported bad faith and "undue delay" in filing it which, they claim, unfairly prejudices them.

None of the factors looked to by courts weigh in favor of denying Defendants' motion. *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (noting "this determination should be performed with all inferences in favor of granting the motion"); *see also Foman v. Davis*, 371 U.S. 178, 181-182 (1962) ("[t]he Federal Rules reject the approach that pleading is a game of skill . . . accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

#### 1.   Defendants Have Not Brought this Motion in Bad Faith

Plaintiffs argue Defendants' counterclaim was "tactical," brought in bad faith, and intended to "fan the media flames, tarnish Plaintiff's reputation, and poison the jury pool." Opp. at 19.[2]

First, while Plaintiffs express dissatisfaction with the media's attention to Defendants' motion, they fail to articulate how this qualifies as "bad faith" under Rule 15(a). Media interest can hardly imbue "bad faith motives" on Defendants, particularly given the media's treatment of this motion would have been the same if Defendants filed their counterclaim by the initial responsive deadline. Plaintiffs' contention lacks logic.

---

[2] Plaintiffs argue Defendants violated Local Rule 5-1, which governs electronic filing procedures, by "posting" video footage to "Defendants' law firm webpage." Dkt. 37 at 19.  Defendants did no such thing.  Instead, Defendants included a hyperlink that allowed the Court to access the body camera footage.  The hyperlink Defendants included in the proposed counterclaim was the same type of link Defendants used previously to submit the security camera footage to the Court as the Court requested at the initial status conference on May 11, 2020.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED JOINT ANSWER AND
COUNTERCLAIM OF UJIRI; Case No. 4:20-cv-000981-YGR                                    5

1    Second, Plaintiffs' grievance is also ungrounded in fact. Defendants filed this motion to

2   vindicate Mr. Ujiri's rights, not to taint the jury pool. While in their motion and counterclaim

3   Defendants explained the evidence necessitating their amendment in a publicly filed document, this is

4   hardly bad faith. *Macias v. Cleaver*, No. 1:13-CV-01819-BAM, 2016 WL 8730687, at *6 (E.D. Cal.

5   Apr. 8, 2016) (finding it permissible and "necessary . . .[in a motion to amend to add a counterclaim]

6   to fully explain what new evidence was produced and why those facts could not have been known to

7   him prior to the amendment deadline."). Defendants' conduct does not rise to the level of bad faith,

8   and in fact, reveals that Mr. Ujiri brought his counterclaim after exceptionally strong evidence

9   supporting it was obtained. This counterclaim is not futile such that dilatory motives in filing it could

10   be inferred. *See Griggs v. Pace Am. Grp.*, 170 F.3d 877, 881 (9th Cir. 1999) (finding bad faith exists

11   where the plaintiff "merely is seeking to prolong the litigation by adding new but baseless legal

12   theories").

13    Plaintiffs make two main contentions in support of their bad faith argument. First, they take

14   issue with Defendants' allegation that Mr. Ujiri pushed Mr. Strickland back only after Mr. Strickland

15   assaulted him by shoving him forcefully twice. Opp. at 20. Plaintiffs contend "Mr. Ujiri has already

16   conceded that he pushed Mr. Strickland first." *Id.* Plaintiffs' contention is absurd. **Both** the security

17   footage Plaintiffs have had since at least May 13, 2020 **and** the body camera footage they produced on

18   July 17, 2020 show that Mr. Ujiri did not "push" Mr. Strickland until after Mr. Strickland cursed at

19   him, ignored his claim to be President of the Raptors, ignored the credential he tried to show to Mr.

20   Strickland, and shoved him twice. It is remarkable that despite this video evidence Plaintiffs **still**

21   contend Mr. Ujiri somehow pushed Mr. Strickland first and that Defendants and their counsel have

22   acted in bad faith by failing to concede a fact that is demonstrably false. One must only watch the body

23   camera footage to understand this.

24    Second, Plaintiffs contend Defendants acted in bad faith by alleging Mr. Ujiri had an "all-access

25   credential that allowed him to access virtually every part of Oracle Arena including the location he was

26   at when he encountered Mr. Strickland." *Id.* Plaintiffs contend this statement is misleading because Mr.

27   Ujiri did not have the "correct credential" or "golden armband" needed to access the court. *Id.* at 21.

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED JOINT ANSWER AND
COUNTERCLAIM OF UJIRI**; Case No. 4:20-cv-000981-YGR                    6

1      Preliminarily, Plaintiffs' disagreement with Defendants' factual contentions is more

2 appropriately raised in a motion to dismiss or for summary adjudication, not to support a claim of bad

3 faith under Rule 15(a). But in any event, Defendants' credentials allegations are neither false nor

4 misleading. Plaintiffs completely miss the point of these allegations regarding the "all-access"

5 credential Mr. Ujiri held, which is: he was authorized to be at the location he was at when he

6 encountered Mr. Strickland (which was not yet on the basketball court), and **Mr. Ujiri's "all-access"**

7 **credential would suggest to any reasonable law enforcement officer that he was not a threat to**

8 **anyone**. It strains credulity to suggest that someone who was issued such a high-level credential—one

9 that gave him free reign throughout Oracle Arena—posed a threat of violence or disruption, or was

10 likely to commit a crime. In fact, using the same credential he had tried to show Mr. Strickland, Mr.

11 Ujiri made his way peacefully from one end of Oracle Arena, past numerous arena security personnel

12 who allowed him to pass freely, to where he encountered Mr. Strickland.  He was able to easily traverse

13 the arena in such close proximity to the basketball court because his credential allowed him to do so.

14 Had Mr. Strickland acted professionally and simply looked at Mr. Ujiri's credential when he showed

15 it to him, he would have learned that Mr. Ujiri had a very high-level credential, which would indicate

16 to any reasonable law enforcement officer that Mr. Ujiri was not a threat and was not someone trying

17 to "storm" the basketball court as Mr. Strickland has alleged in his related workers compensation case.

18 *See* Dkt. 35, at ¶¶ 45-48. Defendants have not engaged in bad faith by including allegations regarding

19 the credential Mr. Ujiri had on him during the encounter.

20      Additionally, Defendants have not acted in bad faith simply because Mr. Ujiri's proposed

21 counterclaim does not discuss the "gold armband" or "trophy credential." The body camera footage

22 makes clear that Mr. Strickland had no reason to use the degree of force he chose to use against Mr.

23 Ujiri irrespective of the type of credential Mr. Ujiri had on him when he encountered Mr. Strickland.

24 Defendants were not obligated to include these irrelevant allegations in Mr. Ujiri's proposed

25 counterclaim. Plaintiffs cannot credibly contend Defendants have acted in bad faith simply because

26

27

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED JOINT ANSWER AND COUNTERCLAIM OF UJIRI**; Case No. 4:20-cv-000981-YGR          7

1   Defendants disagree that Mr. Strickland's use of force was justified on the basis of the credentials Mr.

2   Ujiri held.[3]

### 2.      There Was No Undue Delay in Filing Defendants' Motion

4       Plaintiffs claim that Mr. Ujiri knew the facts giving rise to his claims immediately, and therefore

5   any delay at all is unjustifiable. This does not constitute "undue delay" under this legal standard.

6       First, as noted above, Defendants filed this motion within weeks of receiving evidence that

7   revealed with great clarity Mr. Strickland's use of unreasonable force. But even if Plaintiffs could

8   demonstrate that Defendants had unreasonably delayed in bringing this motion (they cannot) "delay

9   alone is not sufficient to justify the denial of a motion requesting leave to amend," *DCD Programs,*

10  *Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987), "particularly 'where there is a lack of prejudice to

11  the opposing party and the amended complaint is obviously not frivolous or made as a dilatory

12  maneuver in bad faith.'" *Serpa v. SBC Telecomms., Inc*., 318 F. Supp. 2d 865, 872 (N.D. Cal. 2004)

13  (citing *Hurn v. Ret. Fund Trust of Plumbing, Heating & Piping Indus. of S. California*, 648 F.2d 1252,

14  1254 (9th Cir. 1981)). *See e.g., Bowles v. Reade*, 198 F.3d 752, 758-59 (9th Cir. 1999) (finding undue

15  delay on its own does not justify denial of a motion for leave to amend.); *Macias*, *supra*, 2016 WL

16  8730687, at *5 (same).

17      In the absence of prejudice, the party opposing the motion to amend has the burden of showing

18  why amendment should not be granted. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th

19  Cir. 1987); *Macias*, *supra*, 2016 WL 8730687, at *4.

### 3.      Any Prejudice Suffered by Plaintiffs Does Not Warrant Denying Defendants' Motion

22      Plaintiffs have not established that they will suffer substantial prejudice if Defendants' motion

23  is granted. *See James ex rel. James Ambrose Johnson, Jr., 1999 Trust v. UMG Recordings, Inc.*, No. C

---

24  [3] Ironically, it is Deputy Strickland and his counsel who have acted in bad faith and routinely misled
25  the Court and the public. As detailed in Mr. Ujiri's proposed counterclaim, Deputy Strickland has
    misrepresented nearly every aspect of his encounter with Mr. Ujiri. He has also falsely alleged that
26  Mr. Ujiri has a propensity for physical violence and has engaged in previous violent acts. Deputy
    Strickland and his counsel made these defamatory allegations knowing they had absolutely no
27  legitimate basis for making them, as they have admitted in subsequent discovery responses. This
    constitutes an egregious example of bad faith which Defendants intend to address by way of an
28  appropriate motion.


LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED JOINT ANSWER AND
COUNTERCLAIM OF UJIRI**; Case No. 4:20-cv-000981-YGR                    8

1    11-1613 SI, 2012 WL 4859069, at *2 (N.D. Cal. Oct. 11, 2012) ("If a court is to deny leave to amend

2    on grounds of undue prejudice, the prejudice must be substantial."). In fact, Plaintiffs make only vague

3    assertions of prejudice that are attendant to any defense of a claim, such as additional litigation expense

4    and expert discovery. But "[t]he fact that the amended counterclaim may cause more work does not

5    constitute prejudice." *Fru-Con Const. Corp.*, *supra*, 2006 WL 3733815, at *5.

6        And Plaintiffs claim that granting Defendants' motion would "require pushing out discovery

7    deadlines" "and likely trial" is entirely unsupportive of their position. Indeed, prejudice to Plaintiffs, if

8    any, would actually be *eliminated* by a continuance of the discovery deadlines. *See Lopez v. Comcast*

9    *Cable Communs. Mgmt. LLC*, 2016 U.S. Dist. LEXIS 5517 (N.D. Cal. Jan. 15, 2016) (court granted

10   leave to amend where a continuance of the discovery deadlines would eliminate possible prejudice to

11   Defendant); *Macias*, *supra*, at *5 (E.D. Cal. Apr. 8, 2016). More fundamentally, a Court's decision to

12   extend discovery deadlines in this context is not the type of prejudice that precludes amendment. *See*

13   *Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist*., 2006 U.S. Dist. LEXIS 94421, *16-17 (E.D.

14   Cal. Dec. 15, 2006).

15       Plaintiffs have utterly failed to allege any prejudice they will suffer should the Court permit

16   Defendants to raise their counterclaim, which is based on the same transaction or occurrence, and raises

17   serious constitutional claims. *See* Rule 13(a). Compulsory claims like those asserted here should not

18   be precluded under these circumstances, a principle the Ninth Circuit widely recognizes. *See Lopez v.*

19   *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("we have repeatedly stressed that the court must remain

20   guided by the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the

21   pleadings or technicalities.")

22       The cases cited by Plaintiffs are entirely inapplicable and do not support their position. For

23   example, in *Byrd v. Guess*, 137 F.3d 1126, 1131–32 (9th Cir. 1998), plaintiffs sought to amend their

24   complaint **after trial**, to change a party. The court found denial of their motion proper because:

25       In pretrial proceedings the Byrds never presented any evidence, . . .that they were
         successors in interest to Sylvan Byrd. The Byrds then proceeded through an entire trial
26       without making any argument or introducing any evidence concerning their
         representational capacity. Not until that trial was over did they submit a proposed
27       amended complaint that contained a single sentence alleging that they were suing as
         successors in interest.

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED JOINT ANSWER AND
COUNTERCLAIM OF UJIRI; Case No. 4:20-cv-000981-YGR                                    9

1    *Byrd v. Guess*, 137 F.3d 1126, 1132 (9th Cir. 1998). And others of Plaintiffs' cases are factually

2    inapposite to resolution of Defendants' motion here.[4] Defendants' motion should be granted.

3    **III.**    **CONCLUSION**

4         Mr. Ujiri has serious claims, grounded in the U.S. Constitution, which have come to light only

5    recently as a result of evidence produced by Plaintiffs in this litigation. Plaintiffs will not suffer

6    prejudice sufficient to outweigh the strength of Defendants' claims. Defendants' motion should be

7    granted because under Rule 15(a), "justice so requires."

8

9    Dated:  September 8, 2020                    Respectfully submitted,

10                                                **COTCHETT, PITRE & McCARTHY, LLP**

11                                                By:    */s/ Tamarah P. Prevost*

12                                                       JOSEPH W. COTCHETT
                                                         EMANUEL B. TOWNSEND
13                                                       TAMARAH P. PREVOST

14                                                *Attorneys for Defendants Masai Ujiri, Toronto*
                                                  *Raptors/Maple Leaf Sports & Entertainment*
15

16

17

18

19

20

21

22   [4] *See e.g.s.*, *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294–95 (9th Cir. 2000) (movant sought to
     amend complaint to add entirely new theory of liability, but waited until their reply to non-movant's
23   motion for summary judgment, despite having all the requisite evidence to assert this claim **several
     years earlier**); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 606 (9th Cir. 1992) (motion to
24   name an additional party denied after court found no justifiable circumstances for doing so); *In re W.
     States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 739 (9th Cir. 2013) (movant's motion to
25   add a new legal theory including a treble damages claim denied after **several months of delay**);
     *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080 (9th Cir. 2002) (denial of motion to amend
26   complaint to add several new causes of action, when discovery was to close five days after motion to
     amend was filed); *Janicki Logging Co. v. Mateer*, 42 F.3d 561 (9th Cir. 1994) (motion properly
27   denied where proposed amendment substituted new parties to allow transfer to Court of Federal
     Claims, in light of undue delay and prejudice because movant did not seek amendment until three
28   years after it filed case, after entry of judgment, and after final dismissal of separate case brought in
     Court of Federal Claims.)

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED JOINT ANSWER AND
COUNTERCLAIM OF UJIRI; Case No. 4:20-cv-000981-YGR                                    10