MATTHEW M. GRIGG, SBN 195951
mmg@grigglegal.com
**LAW OFFICES OF MATTHEW M. GRIGG**
1700 N. Broadway, Ste. 360
Walnut Creek, CA 94596
510-703-4576

Co-Counsel for Plaintiff/Counter-Defendant Alan Strickland

**UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALAN STRICKLAND, et al., | Case No.: 20-cv-000981-YGR |
| Plaintiffs, | **PLAINTIFF/COUNTER-DEFENDANT ALAN STRICKLAND'S MOTION TO DISMISS COUNTERCLAIMS** |
| v. | |
| MASAI UJIRI, et al. | Date:  November 17, 2020 |
| Defendants, | Time:  2:00 p.m. |
| | Via:   Zoom |
| and Related Counteraction. | Judge: Hon. Yvonne Gonzalez Rogers |

**NOTICE OF MOTION & MOTION**

To Defendant-Counterclaimant Masai Ujiri, his attorneys, and all other interested parties: Please take notice that, on November 17, 2020, at 2 p.m., Plaintiff/Counter-Defendant Deputy Alan Strickland will request dismissal of Mr. Ujiri's counterclaims because each fails to state a claim for which relief may be granted under FRCP 12(b)(6). The Court's scheduling notes state any hearing will be conducted via the Zoom link on Judge Gonzalez Rogers' home page.

This Motion is based on this Notice of Motion & Motion, the Memorandum of Points and Authorities that follows, the counterclaim and exhibits thereto, matters judicially noticeable, and such other matters as the Court may allow.

**MEMORANDUM OF POINTS & AUTHORITIES**

**I. Introduction**

As the decisive game of the 2019 NBA Finals was ending, Masai Ujiri lacked the security credentials necessary for court access. He twice tried to barge past courtside security anyway. When Deputy Alan Strickland tried to slow him for a security check, Mr. Ujiri swatted his hand away and tried to shoulder his way past. To prevent the security breach, Deputy Strickland ultimately had to shove him in the chest. Mr. Ujiri nonetheless again tried to barge past without permitting inspection of even the invalid security credential he did possess. Deputy Strickland thus had to shove him again to prevent the security breach. Predictably, neither open-handed shove to Mr. Ujiri's chest caused any injury. But Mr. Ujiri then decided to assault Deputy Strickland anyway.

Apparently for public relations reasons, Mr. Ujiri now asserts an assortment of false allegations in counterclaims. Though Mr. Ujiri's counterclaims are substantively frivolous, they also are untenable as a matter of pleading:

➢ Under governing law, Mr. Ujiri's state law counterclaims ("assault," "battery," and "intentional infliction of emotional distress") must be dismissed because Mr. Ujiri does not allege compliance with the Tort Claims Act's claim presentation requirement.

➢ Qualified immunity mandates dismissal of Mr. Ujiri's Fourth Amendment claim because: (1) Mr. Ujiri's allegations and exhibits confirm the absence of any plausible notion of unconstitutional force, and (2) even assuming a rights violation for argument's sake, clearly established law did not place Deputy Strickland's particularized conduct's purported unconstitutionality "beyond debate."

Because amendment could not salvage Mr. Ujiri's counterclaims, they should be dismissed without leave to amend.

**II. Standards Governing Motions To Dismiss**

"A motion to dismiss a counterclaim brought pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated under the same standard as a motion to dismiss a complaint." *Swingless Golf Club. Corp. v. Taylor*, 679 F.Supp.2d 1060, 1066 (N.D. Cal. 2009).

1  Dismissal thus is appropriate when a counterclaim "fails to state a claim upon which relief
2  may be granted" – e.g., due to an affirmative defense. Fed. R. Civ. P. 12(b)(6); *Sams v. Yahoo!*
3  *Inc.,* 713 F.3d 1175, 1179 (9th Cir. 2013).

4  While conducting this analysis, courts consider: (1) a counterclaim's well-pleaded *factual*
5  (but not conclusory) allegations, (2) counterclaim exhibits, and (3) matters judicially noticeable.
6  *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012); *Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th
7  Cir. 2012); *Lee v. City of Los Angeles*, 250 F.3d 668, 668-69 (9th Cir. 2001).

8  The well-pleaded factual allegations "must be enough to raise a right to relief above the
9  speculative level" such that the claim "is plausible on its face." *Bell Atlantic Corp. v. Twombly*,
10  550 U.S. 544, at 555 (2007).

### III. Facts & Allegations

On June 13, 2019, the Toronto Raptors defeated the Golden State Warriors at Oracle Arena to clinch the NBA championship. Counterclaim, ¶10 (ECF Doc. 43, p. 15).

Alan Strickland, a uniformed Alameda County Sheriff's Office deputy, was assigned to provide security. *Id.*, ¶¶14, 55. During the game's final minutes, he was posted courtside next to a private security official wearing an earpiece, coat and tie, badges, and a Warriors "Jason S." nametag. *See*, *e.g.*, Exh. 1(b) at 3:51-3:59.[1] He spent several minutes politely but firmly explaining to people lacking gold armbands that they could not go past and onto the court, and apologizing for the inconvenience. *See generally* Exh. 1(b).

When the game ended, Deputy Strickland saw Mr. Ujiri advancing toward the courtside security checkpoint. Counterclaim, ¶13; Exh. 1(a) at 1:04-1:06; Exh. 1(b) at 5:07. To alert the private security official, he pointed at Mr. Ujiri. Exh. 1(a) at 1:04. Mr. Ujiri was not wearing any armband or even a lanyard with a credential on it. *Id.*; *see also* Exh. 1(b) at 5:06.[2]

---

[1] Mr. Ujiri attaches three different video excerpts to his counterclaims collectively as Exhibit 1. For ease of reference, Deputy Strickland will refer to them as Exh. 1(a) (arena video), Exh. 1(b) (body cam video), and Exh. 1(c) (short body cam video), corresponding to the order in which they appear on Mr. Ujiri's counsel's linked website.

[2] Though unnecessary for this motion's resolution, the evidence would show that: (1) at that time, Mr. Ujiri needed a bright gold armband for court access, (2) that, after the stage had been erected for the

The private security official spoke to Mr. Ujiri, explaining that he wanted to check his credentials "real quick." Exh. 1(b) at 5:07-5:09; Exh. 1(a) at 1:05-107. But Mr. Ujiri completely ignored him and continued past. Exh. 1(b) at 5:07-5:11; Exh. 1(a) at 1:05-107.

Mr. Ujiri now alleges he had a credential that allowed him to access "*virtually*" all parts of the arena. Counterclaim, ¶18. But he, tellingly, does not allege he possessed the credential necessary to pass by Deputy Strickland and the private security official to enter the court. *See id.*

When Mr. Ujiri blew by the private security officer, Deputy Strickland directed Mr. Ujiri's attention back to the private security official by pointing, and by instructing Mr. Ujiri to "*Show him, show him!*" – i.e., show the private security official credentials. Exh. 1(b) at 5:07-5:10. Deputy Strickland also then tried to redirect Mr. Ujiri, by gently grabbing his right elbow with his left hand's fingertips. Exh. 1(b) at 5:09; Exh. 1(a) at 1:07-1:08.

But just as Mr. Ujiri had completely ignored the private security official, he completely ignored Deputy Strickland's words, gesture, and attempt at gentle physical guidance. Exh. 1(a) at 1:06-1:08. He swatted Deputy Strickland's hand away and tried to barge past. Exh. 1(a) at 1:06-108; *see also* Exh. 2 (Wiener Decl., ¶3); Counterclaim, ¶14. To prevent him from circumventing security, Deputy Strickland thus shoved him, while unequivocally ordering him to "back the fuck up!" Exh 1(b) at 5:10; Exh. 1(a) at 1:08.

Undeterred, Mr. Ujiri, again tried to barge past while claiming to be the Raptors' president, and while still refusing to show either Deputy Strickland or the private security official whatever credential he possessed. Exh. 1(a) at 1:10-1:12. Deputy Strickland, who simultaneously was being pulled backward by an unknown, shouting man, thus shoved him a second time. Exh. 1(a) at 1:11-1:13.

Still – rather confer with the private security officer or Deputy Strickland, or even permit them to inspect his credentials – Mr. Ujiri assaulted Deputy Strickland. Exh. 1(b) at 5:00; Exh. 1(a) at 1:15. Mr. Ujiri then proceeded to celebrate and give an interview. Counterclaim, ¶2.

---

awards presentation, he would have needed a purple "Trophy Presentation" credential, and that (3) Mr. Ujiri had neither credential.

Mr. Ujiri does not purport to have sustained any physical injury due to Deputy Strickland's conscientious efforts to enforce security. *See generally* Counterclaim. He claims unspecified "emotional distress." *Id.*, ¶80.

### IV. Mr. Ujiri's Failure to Allege Compliance with California Claim Presentation Requirement Necessitates Dismissal of His State Law Counterclaims

The California Tort Claims Act (CTCA) requires timely submission of a "tort claim" to a public entity prior to assertion of a California law-based personal injury claim against the entity or its employees in state or federal court. *See* Cal. Govt. Code §§ 905.2, 910, 911.2, 945.4, 950-950.2; *Karim-Panahi v. Los Angeles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *State v. Superior Ct.* (*Bodde*), 32 Cal.4th 1234, 1245 (2004).

Because compliance with the claim presentation requirements is a prerequisite to suit, it is an element of a state tort law-based cause of action. *See id.* Consequently, "[t]o state a tort claim against a public employee, **a plaintiff <u>must</u> allege compliance with the CTCA**." *Hendon v. Ramsey*, 528 F.Supp.2d 1058, 1069 (S.D. Cal. 2007) (emphasis added); *Beagle v. Schwarzenneger*, 107 F.Supp.3d 1056, 1072 (E.D. Cal. 2014) (same); *Robinson v. Alameda County*, 875 F.Supp.2d 1029, 1043 (N.D. Cal. 2012); *Karim-Panahi*, 839 F. 2d at 627 (9th Cir. 1988) (concluding "district court properly dismissed the state law tort claims…[when the] complaint fail[ed] to allege compliance with California tort claim procedures.")

Here, Mr. Ujiri did <u>not</u> submit a tort claim to Alameda County before filing his counterclaims. He thus does not purport to have done so. *See generally* Counterclaim. The absence of this requisite allegation renders his three California law-based counterclaims (assault, battery, and intentional infliction of emotional distress) unsustainable as a matter of law. *See*, *e.g.*, *Karim-Panahi*, 839 F. 2d at 627.

### V. Qualified Immunity Bars the Fourth Amendment Claim Because Clearly Established Law Did Not Place the Challenged Conduct's Unconstitutionality "Beyond Debate"

A.     <u>Governing Law</u>

The doctrine of qualified immunity shields public officials against claims of alleged rights violations when their conduct does not violate "clearly established law." *See*, *e.g.*, *White v. Pauly*,

137 S. Ct. 548, 551 (2017) (per curiam). The doctrine "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 551.

"The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). The doctrine thus takes into account the real world demands to which officials are subject, and seeks to allow them to act "swiftly and firmly" in situations in which the rules governing their actions are often "voluminous, ambiguous, and contradictory." *Id.*

Qualified immunity "is an immunity from suit rather than a mere defense to liability." *See, e.g.*, *Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016). The Supreme Court thus repeatedly has stressed the importance of resolving qualified immunity "at the earliest possible stage in litigation." *Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017).

Under the qualified immunity analysis, it is the plaintiff's burden to show both that a right was violated, and that the right was "clearly established" at the time. *See, e.g.*, *Isayeva v. Sacramento Sheriff's Dept.*, 872 F.3d 938, 946 (9th Cir. 2017).

The "clearly established inquiry" is "a question of law that only a judge can decide." *Rodriguez v. County of Los Angeles*, 891 F.3d 776 (9th Cir. 2018). In so doing, judges must be mindful that the Supreme Court "has repeatedly told courts ... not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 584 U.S. __, 138 S.Ct. 1148, 1153 (2018). Otherwise, plaintiffs would be able to create "virtually unqualified liability" by alleging violation of abstract rights. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

A right is <u>not</u> "clearly established" for qualified immunity purposes <u>unless</u> its contours are so clear that "***every*** reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. __, 136 S. Ct. 305, 308 (2015) (per curiam) (emphasis added, quotation marks omitted). Qualified immunity thus forecloses suit unless preexisting, controlling case law "squarely governs" the particular facts at issue, and the unconstitutionality of an official's conduct "follow[s] immediately" from it. *Mullenix*, 136 S. Ct. at 309, 311; *see also Kisela*, 138 S.Ct at 1153; *Anderson*, 483 U.S. at 640 (inquiry must be "particularized" to the facts of the case).

"Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine [e.g.,] excessive force, will apply to the factual situation the officer confronts." *Mullenix*, 136 S. Ct. at 308.

In other words, preexisting precedent must have "placed **beyond debate** the unconstitutionality of" the official's actions, as those actions unfolded in the specific context of the case at hand. *Taylor v. Barkes*, 135 S. Ct. at 2044 (emphasis added). "To deny immunity, [courts therefore] must conclude that **every** reasonable official would have understood, *beyond debate*, that the conduct was a violation of a constitutional right." *Martinez v. City of Clovis,* 943 F.3d 1260, 1275 (9th Cir. 2019) (emphasis added). And the rule is that courts may **not** do so unless there exists a prior case "where an officer acting under similar circumstances ... was held to have violated [a constitutional right]." *White v. Pauly*, 580 U.S. __ 137 S. Ct. 548, 552 (2017).

B.   Absence of Facts "Plausibly" Evincing Any Excessive Force

It often is challenging to establish the absence of a rights violation via a motion to dismiss because factual allegations generally must be viewed in the claimant's favor. But, thankfully, Mr. Ujiri here has provided abundant video that confirms his notion of excessive force is not "plausible." *Cf. Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (facts "must plausibly suggest an entitlement to relief"); *Sumner Peck Ranch v. Bureau of Recl.*, 823 F. Supp. 715, 720 (E.D. Cal. 1993) (claimant's allegations appropriately disregarded when "contradicted by facts established by exhibits to the complaint."); *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) (same).

Under the Fourth Amendment, whether force is constitutionally excessive pivots on whether it is "objectively reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Officers "need not avail themselves of the least intrusive means of responding and need only act within that range of conduct we identify as reasonable." *Billington v. Smith*, 292 F.3d 1177, 1188 (9th Cir. 2002).

Assessing objective reasonableness requires a balancing of the allegedly excessive force's nature and quality against the countervailing governmental interests. *Id*.  The balancing must take

into account that law enforcement officers "are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation. *Id*. at 396-97; *see also id*. ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment.") This balancing also must be made "from the perspective of a reasonable officer on the scene" and not "with the 20/20 vision of hindsight." *Id*. at 396.

Here, the video confirms that Deputy Strickland was faced with an individual:

1. who initially was displaying no credentials whatsoever as he approached the secured court area,
2. who ignored the private security official's request to show credentials,
3. who disregarded Deputy Strickland pointing to the private security official,
4. who disregarded Deputy Strickland's repeated instructions to show his credentials to the private security official, and
5. who swatted Deputy Strickland's hand away and tried to barge past when Deputy Strickland tried to gently direct him back to the private security official by grabbing his elbow.

In other words, this was an individual who actively resisted multiple efforts to investigate his right to court access. And, as is self-evident from the video, had Deputy Strickland not employed force, he would have risked having the suspect not only trespass onto the court, he would have risked the suspect quickly getting lost amid the growing crowd of folks authorized to be on the court, and potentially committing any number of possibly serious crimes. After all, this was a high-profile sporting event, which entailed a risk of crimes ranging from vandalism to assaults on players (e.g., the 1993 fan's stabbing of tennis great Monica Seles), assaults on coaches (e.g., the 2002 assault of Royals Coach Tom Gamboa by two fans), player-fan brawls (the 2004 brawl involving numerous fans and players at the end of a Pistons-Pacers NBA game), and even mass murder or terrorism (e.g., the mass murder of Israeli athletes by terrorists at the Munich Olympics). The same threats persisted when Mr. Ujiri continued to attempt to barge past the second time, still without showing his (invalid) credential, even after being shoved and ordered to back up.

Balanced against this is that the force Deputy Strickland employed after lesser methods proved futile was *de minimis*. *Cf. Parker v. City of Los Angeles et al*, No. 215CV04670SVWJEM, 2016 WL 9153765, at *7 (C.D. Cal. June 22, 2016) ("a *de minimis* use of force is insufficient to support a claim of excessive force"). He did not punch or tackle Mr. Ujiri. He instead shoved Mr. Ujiri twice in the chest with open hands. Predictably, this caused no injury to the massive (6'4") Mr. Ujiri, such that Mr. Ujiri promptly thereafter went to give an interview and celebrate. *Cf. Felarca v. Brigeneau*, 891 F.3d 809 (9th Cir. 2018) ("We may infer from the minor nature of a plaintiff's injuries that the force applied was minimal.")

C.  The Absence Of Clearly Established Law On Point Necessitates Dismissal Regardless.

Even if we were to pretend excessive force occurred for argument's sake, qualified immunity still would mandate dismissal due to the stark absence of clearly established law from which "**every**" reasonable deputy in Deputy Strickland's particularized circumstances would have concluded, beyond debate, that the force employed was unconstitutional. *Cf. Brooks v. Clark County*, 828 F.3d 910, 920 (9th Cir. 2016) (reversing district court denial of qualified immunity at motion to defense stage when law and facts appropriately deemed true were such that a reasonable official could have considered the use of force reasonable; i.e., the force was not "indisputably unconstitutional").

Because no precedent "squarely governs" the "particularized" facts at issue here, Mr. Ujiri cannot meet his burden of identifying any. As a matter of law, his inability to do so mandates dismissal. *See*, *e.g*., *Mullenix*, 136 S.Ct. at 309, 311.

## VI. Conclusion

Amendment could not salvage Mr. Ujiri's state law counterclaims because he did not did not submit a tort claim to the County, and thus in light of Rule 11 cannot allege compliance with the claim presentation requirements.

Amendment likewise could not salvage Mr. Ujiri's Fourth Amendment counterclaim because: (1) his video exhibits confirm he cannot consistent with Rule 11 offer facts stating a rights violation, and (2) the lingering stark absence of clearly established law placing beyond

1 debate Deputy Strickland's conduct's ostensible unconstitutionality would foreclose further
2 prosecution regardless.
3     Consequently, Mr. Ujiri should be precluded from subjecting Deputy Strickland and the
4 taxpayers who fund his defense to the burdens and expenses of continued litigation of his
5 substantively untenable, procedurally impermissible, and immunity-barred counterclaims. The
6 counterclaims should be dismissed **with** prejudice.
7 Respectfully submitted:
8 Dated: October 5, 2020          LAW OFFICES OF MATTHEW M. GRIGG

/s/ Matthew M. Grigg
_____
Matthew M. Grigg
Co-Counsel for Plaintiff/
Counter-Defendant Alan Strickland