1   JOSEPH W. COTCHETT (SBN 36324)
    jcotchett@cpmlegal.com
2   EMANUEL B. TOWNSEND (SBN 305373)
    etownsend@cpmlegal.com
3   TAMARAH P. PREVOST (SBN 313422)
    tprevost@cpmlegal.com
4   **COTCHETT, PITRE & McCARTHY, LLP**
    840 Malcolm Road
5   Burlingame, CA 94010
    Telephone:  (650) 697-6000
6   Facsimile:  (650) 697-0577

7   *Attorneys for Defendants Masai Ujiri, Toronto*
    *Raptors/Maple Leaf Sports & Entertainment*

8

9

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| **ALAN STRICKLAND**, an individual; and **KELLY STRICKLAND**, an individual, | Case No. 4:20-cv-00981-YGR |
| Plaintiffs, | **COUNTERCLAIMANT UJIRI'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS** |
| v. | |
| **MASAI UJIRI**, an individual; et al. | Date:        November 17, 2020 |
| Defendants. | Time:        2:00 p.m. |
| | Courtroom:  By Zoom as set by the Court |
| | Judge:       Hon. Yvonne Gonzalez Rogers |
| **MASAI UJIRI**, an individual, | |
| Defendant/Counterclaimant, | |
| v. | |
| **ALAN STRICKLAND**, an individual, | |
| Plaintiff/Counterdefendant. | |

## TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL ALLEGATIONS ........................................................................ 2

III.  LEGAL STANDARD ................................................................................... 5

    A.    Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) ....................... 5

    B.    Leave to Amend ................................................................................... 5

IV.   ARGUMENT ................................................................................................ 6

    A.    Strickland is Not Entitled to Qualified Immunity; Mr. Ujiri's § 1983          Cause of Action Against Strickland Survives Motion to Dismiss. ...................... 6

        1.    The Law on Qualified Immunity. ........................................................ 6

        2.    Excessive Use of Force. .................................................................... 7

            a.    Mr. Ujiri's Fourth Amendment right was violated. ............................... 7

                i.    The Facts Alleged in Mr. Ujiri's Counterclaim Establish Excessive Force ................................................... 7

                ii.   The Video Evidence Shows Strickland's Excessive Force ...... 11

                iii.  It Was Objectively Unreasonable to Assume Mr. Ujiri Posed a Threat ................................................................ 13

            b.    Mr. Ujiri's Fourth Amendment Right Was Clearly Established. ......... 15

    C.    The Requirements and Purpose of the California Tort Claims Act. ........................... 16

        1.    The Act does not apply to defensive, compulsory counterclaims, when the public entity is the first complainant ....................................... 18

        2.    The Act's Requirements Only Apply to Claims for Money or Damages......... 19

        3.    Plaintiff Strickland Should be Estopped from Using the Tort Claims Act as a Shield .......................................................... 20

V.    CONCLUSION ........................................................................................... 21

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

1

## TABLE OF AUTHORITIES

**Page (s)**

**Cases**

*Alexander v. County of Los Angeles*
64 F.3d 1315 (9th Cir. 1995) .................................................................7

*Ashcroft v. Iqbal*
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ....................5

*Austin v. Regents of University of California*
89 Cal.App.3d 354 (1979) ....................................................................20

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ....................5

*Bryan v. MacPherson*
630 F.3d 805 (9th Cir. 2010) ..............................................................13

*Christopher P. v. Mojave Unified School Dist.*
19 Cal.App.4th 165 (1993) ..................................................................20

*City of Stockton v. Superior Court*
(2007) 42 Cal.4th 730 .................................................................17, 20

*Cory v. City of Huntington Beach*
(1974) 43 Cal.App.3d 131 ..................................................................17

*County of Sacramento v. Lackner*
97 Cal.App.3d 576 (1979) ..................................................................19

*Espinosa v. City & Cnty. Of San Francisco*
598 F.3d 528 (9th Cir. 2010) ................................................................6

*Fontana v. Haskin*
262 F.3d 871 (9th Cir. 2001) ..............................................................16

*Graham v. Connor*
490 U.S. 386 (1989) .........................................................................7, 8

*Groten v. California*
251 F.3d 844 (9th Cir. 2001) ................................................................7

*Harlow v. Fitzgerald*
457 U.S. 800 (1982) ..............................................................................6

*Headwaters Forest Def. v. County of Humboldt*
240 F.3d 1185 (9th Cir. 2000) ............................................................16

*Hernandez v. City of San Jose*
241 F.Supp.3d 959 (N.D. Cal. 2017) ...................................................7

*Inouye v. Kemna*
504 F.3d 705 (9th Cir. 2007) ..............................................................16

*John R. v. Oakland Unified School Dist.*
  (1989) 48 Cal.3d 438 .................................................................................................................20

*Johnson v. San Diego Unified School Dist.*
  217 Cal.App.3d 692 (1990) ......................................................................................................21

*Kingsley v. Hendrickson*
  576 U.S. 389 (2015) ....................................................................................................................8

*Leadsinger, Inc. v. BMG Music Publ'g*
  512 F.3d 522 (9th Cir. 2008) .....................................................................................................6

*Life Savers Concepts Assn. of California v. Wynar*
  387 F. Supp. 3d 989 (N.D. Cal. 2019) .....................................................................................7

*Liston v. County of Riverside*
  120 F.3d 965 n.10 (9th Cir. 1997) ........................................................................................7, 13

*Lopez v. Smith*
  203 F.3d 1122 (9th Cir. 2000) ...................................................................................................5

*Los Angeles Brick & Clay Prods. Co. v. City of Los Angeles*
  60 Cal.App.2d 478 (1942) ........................................................................................................19

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
  519 F.3d 1025 (9th Cir. 2008) ...................................................................................................5

*Motley v. Parks*
  432 F.3d 1072 (9th Cir. 2005) .................................................................................................16

*Ortega v. Pajaro Valley Unified School Dist.*
  (1998) 64 Cal.App.4th 1023 ....................................................................................................21

*Otis v. City of Los Angeles*
  52 Cal.App.2d 605 (1942) ........................................................................................................19

*Pacific Gas and Elec. Co. v. City of Union City*
  (N.D. Cal. 2002) 220 F.Supp.2d 1070 ....................................................................................19

*Pearson v. Callahan*
  555 U.S. 223 (2009) ....................................................................................................................6

*People ex rel. Dept of Parks and Recreation v. West-A-Rama, Inc.*
  35 Cal.App.3d 786 (1973) ........................................................................................................18

*Phillips v. Desert Hospital Dist.*
  49 Cal.3d 699 (1989) ................................................................................................................17

*Qwest Communications Corp. v. City of Berkeley*
  146 F.Supp.2d 1081 (N.D.Cal.2001) ......................................................................................19

*San Diego Unified Port Dist. v. Underwriters at Lloyd's, London and other London Market Insurers*
  (S.D. Cal., Aug. 28, 2015, No. 15-CV-00022-WQH-JLB) 2015 WL 5117047, at *5 ............18

*San Francisco Bay Area Rapid Transit v. GE Transp. Systems Global Signaling LLC*
  (N.D. Cal., May 27, 2010, No. C 06-03749 JSW) 2010 WL 2179769, at *3 .........................19

*Santos v. Gates*
   287 F.3d 846 (9th Cir. 2002) ........................................................................................13, 16

*Santos v. Merritt College*
   (N.D. Cal., July 1, 2008, No. C-07-5227 EMC) 2008 WL 2622792, at *4.....................................21

*Saucier v. Katz*
   533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)...........................................15

*White v. Moreno Valley Unified School Dist.*
   181 Cal.App.3d 1024 (1986) ....................................................................................17

*Williams v. Horvath*
   16 Cal.3d 834 (1976) ............................................................................................20

**Statutes**
Civ. Code § 3294 ..................................................................................................20

Fed. R. Civ. Proc. 13(a)(1)(A) ..............................................................................18, 21

Gov. Code § 818 ..................................................................................................20

Gov. Code § 910 ..................................................................................................17

Gov. Code § 911.2 ................................................................................................17

Gov. Code §§810-996.6 ...........................................................................................20

Gov. Code 911.6(a)(1) ............................................................................................20

1

## I.     **INTRODUCTION**

2
   Plaintiff Alan Strickland moves this Court to dismiss Masai Ujiri's counterclaims against him

3   entirely.  Strickland brought a lawsuit against Mr. Ujiri <u>eight months</u> after the encounter in question

4   and now with a new attorney, claims Mr. Ujiri should be barred for failing to notify him within <u>six</u>

5   <u>months</u> of the encounter.  Strickland also asserts a "qualified immunity" defense never before raised,

6   to avoid Mr. Ujiri's counterclaim for excessive force.  Both of these arguments lack merit.

7
   First, Strickland contends he should be immune from Mr. Ujiri's counterclaim for excessive

8   force under a doctrine referred to as "qualified immunity."  This argument should be rejected.  Qualified

9   immunity is a defense to claims of excessive force, where the key factual inquiry is the objective

10  reasonableness of the officer's use of force under the "totality of the circumstances."  At this early

11  stage, the "totality of the circumstances" have not been resolved and therefore the Court cannot

12  properly decide the factual issue of qualified immunity.

13
   Similarly, at the time of the encounter, the law was clearly established that ***any*** force is

14  unreasonable if ***no*** force is needed.  Here, as clearly depicted by the body camera video footage worn

15  by Strickland during the encounter, and as alleged in Mr. Ujiri's counterclaim, Mr. Ujiri was

16  abundantly calm, reasonable, and compliant during his encounter with Strickland, and there was

17  **absolutely no reason** for Strickland to forcefully shove Mr. Ujiri twice without provocation.  At this

18  stage it would be improper to construe the facts in Strickland's favor and find otherwise.  Mr. Ujiri's

19  claim for excessive force should stand.

20
   Second, Strickland argues that Mr. Ujiri's state law tort claims against him should be dismissed

21  for his purported failure to file a "claim" and put Strickland on notice of potential litigation prior to

22  filing in court.  But these procedural rules are inappropriate in cases such as this one, where the public

23  employee was the first to sue.  Moreover, Mr. Ujiri's state tort counterclaims are defensive in nature.

24  He is seeking nominal damages, aiming only to push back against unmerited claims, and a disturbing

25  narrative written by Strickland and his newly retained counsel.  It is especially interesting to note that

26  Strickland's original attorney <u>never raised the issue</u> when Strickland opposed Mr. Ujiri's request to

27  bring these claims.  He waited <u>eight months</u> after the encounter to file suit, and <u>seventeen months</u> after

28  the encounter to raise this argument for the very first time.  As such, his contention that Mr. Ujiri's

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**Counterclaimant Ujiri's Opposition to Plaintiff's Motion to Dismiss Counterclaims; Case No. 4:20-cv-000981-YGR**

failure to send a pre-lawsuit "claim" within six months of the incident appears to be gamesmanship, thinly veiled.

As courts in this state have found, it is "manifestly unjust" to permit a public employee to throw the first stones, then hide behind a shield of procedural and substantive immunity when counterclaims are asserted against them. Strickland's attempts to use his status as a public law enforcement officer as a shield against Ujiri's claims should not be credited. His motion should be denied.

## II.   FACTUAL ALLEGATIONS AT ISSUE

On June 13, 2019, the Toronto Raptors ("Raptors") won their first NBA Championship when they defeated the Golden State Warriors at Oracle Arena in Oakland, California during Game 6 of the 2019 NBA Finals. *See* Dkt. No. 43 at ¶ 10. Masai Ujiri is the Raptors' president. *Id.* When an NBA team wins the championship, it is customary for NBA executives, like Mr. Ujiri, to join their team on the court to accept the championship trophy from the Commissioner of the NBA and to give a live on-camera interview. *Id.* at ¶ 13. As Mr. Ujiri attempted to make his way onto the court to join his team and fulfill his duties as Raptors' President, he encountered Plaintiff/Counterdefendant Alan Strickland. *Id.* Alan Strickland, an Alameda County Sheriff's Deputy, was working as a security guard at the game. *Id.* As Mr. Ujiri attempted to enter the court, Strickland grabbed him by the arm, told him to "**back the fuck up**," (Strickland's own language as shown in his body camera footage) and forcefully shoved him back once and then twice. *Id.*

The entire incident is on camera. *Id.* at ¶ 15. The video footage shows *Strickland* was undeniably the initial aggressor. After the encounter, Mr. Ujiri was immediately escorted to the court where he joined his team, accepted the championship trophy, and gave a live on-camera interview. *Id.* Video and eyewitness evidence clearly establish that Strickland used unnecessary and *excessive force* during his encounter with Mr. Ujiri. *Id.* at ¶ 17. Strickland's two forceful shoves over what should have been a simple misunderstanding, were entirely unjustified. *Id.* It is undisputed that Mr. Ujiri, as Raptors' President, was authorized to enter the basketball court to join his team and celebrate his team's victory and the biggest accomplishment of his professional career. *Id.* When Strickland assaulted him, Mr. Ujiri was not violating any rule or acting aggressively. *Id.* He was simply trying to join his team on the court for a victory celebration. *Id.*

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Before he reached Strickland's post, Mr. Ujiri had walked past a number of Oracle Arena security personnel without incident, because he had an <u>all-access credential</u> that allowed him to access virtually every part of Oracle Arena, including the location he was at when he encountered Strickland. *Id.* at ¶ 18.  Because he had walked by so many Oracle Arena security personnel without incident, Mr. Ujiri reasonably assumed he could continue his path to join the Raptors' players and coaches.  *Id.*  Thus, when Strickland suddenly grabbed Mr. Ujiri's arm, Mr. Ujiri understandably reacted by pulling his arm away.  *Id.*  At that time, Strickland could have asked Mr. Ujiri to see his credentials.  *Id.*  Instead he forcefully shoved Mr. Ujiri in the chest and told him to "***back the fuck up***."  *Id.*  There was no reason to view Mr. Ujiri as a threat to anyone and no reason for Strickland to curse at Mr. Ujiri and forcefully shove him as numerous witnesses observed.  *Id.*

After being shoved and cursed at, Mr. Ujiri did not respond aggressively towards Strickland. *Id.* at ¶ 19.  Instead, he calmly asked Strickland why he had pushed him, informed Strickland he was the Raptors' President, and held up his all-access arena credential to show it to Strickland.  *Id.*  Rather than trying to communicate with Mr. Ujiri, Strickland chose to dismiss Mr. Ujiri's claim that he was the Raptors' President and ignore the <u>all-access credential</u> Mr. Ujiri was trying to show him.  *Id.* Strickland then forcefully shoved Mr. Ujiri <u>a second time</u>.  *Id.*

To date, Strickland has proffered a version of the brief encounter he had with Mr. Ujiri that is, in all material respects, a complete fabrication.  *Id.*  Strickland contends Mr. Ujiri used his right hand to forcefully slap Strickland's left hand as Mr. Ujiri attempted to walk past him.  *Id.* at ¶ 21.  This is false.  *Id.*  The arena footage clearly shows Mr. Ujiri simply pulled his right hand away in an upward motion as Strickland grabbed him. *Id.*

Strickland contends Mr. Ujiri held his credentials out of Strickland's view and then waived them *aggressively* in Strickland's face.  *Id.* at ¶ 22.  This is false.  *Id.*  The arena footage and Strickland's body camera footage show Mr. Ujiri held his credential up to show it to Strickland while calmly asking Strickland why he had pushed him and informing Strickland that he was the Raptors' President.  *Id.* The arena footage shows Strickland did not look up at Mr. Ujiri's credential.  *Id.*  The body camera footage shows Strickland dismissed Mr. Ujiri's claim to be the Raptors' President, and instead forcefully shoved Mr. Ujiri a second time.  *Id.*

1    Strickland contends that after he pushed Mr. Ujiri the first time, Mr. Ujiri re-approached him in

2  "a quick and aggressive manner." *Id.* at ¶ 23.  This is false.  *Id.*  The video evidence (arena footage

3  and body camera footage) shows that after Strickland forcefully shoved Mr. Ujiri the first time, Mr.

4  Ujiri held up his credential to show Strickland his all-access credential, calmly asked Strickland why

5  he had pushed him, and calmly informed Strickland he was the Raptors' President.  *Id.*  Strickland's

6  characterization of "quick and aggressive" is one of many examples of his hyperbole.  *Id.*

7    On February 7, 2020, nearly <u>eight</u> months after the Game 6 encounter, Plaintiff filed suit against

8  Mr. Ujiri bringing claims for assault, battery, intentional infliction of emotional distress, negligence

9  (two counts) and loss of consortium on behalf of Plaintiff's wife, Kelly Strickland.  *See* Dkt. No. 1.

10  Six months after *that*, on July 21, 2020, Plaintiffs produced body camera video footage worn by

11  Plaintiff Alan Strickland on the night of the encounter, revealing Plaintiff Alan Strickland as the initial

12  aggressor.  *See* Dkt. No. 35-1, Ex 1.

13    Mr. Ujiri had never before seen this body camera footage.  After reviewing it for the first time,

14  on August 18, 2020 Ujiri asked the court for permission to file a counterclaim against Strickland for

15  assault, battery, intentional infliction of emotional distress, and excessive force under 42 U.S.C. § 1983.

16  Dkt. No. 35.[1]  On September 15, 2020, the Court agreed and permitted the filing of his counterclaim,

17  finding "[t]he record indicates no failure of diligence by defendants in seeking leave to amend . . . and

18  "[t]he motion to amend was filed with reasonable diligence."  Dkt. No. 42 at 2.  Mr. Ujiri filed his

19  counterclaim three days after this Order, on September 18, 2020.  Dkt. No. 43.

20    Then, on October 5, 2020, Plaintiff Strickland moved to dismiss Mr. Ujiri's counterclaim,

21  arguing that Mr. Ujiri's state law counterclaims for assault, battery, and intentional infliction of

22  emotional distress for 1) failure to comply with a procedural requirement under the California Tort

23  Claims Act, and 2) because Plaintiff Strickland is wholly immune from being sued for unreasonable

24  force under Section 1983.  Dkt. No. 45.

26  / / /

[1] Mr. Ujiri was required to file his counterclaim under Federal Rule of Civil Procedure 13, which requires any claim that arises from the same transaction or occurrence to be filed in a responsive pleading.  *See* Fed. R. Civ. Proc. 13.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

In his motion, Plaintiff Strickland aims to use his status as a law enforcement officer to permanently dispose of Ujiri's legitimate claims against him.  Such tactics should not be credited.  For the reasons set forth herein, Strickland's motion should be denied.

## III.   LEGAL STANDARD

### A.   Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (internal quotation marks omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008).

### B.   Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted).  When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted).  Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.

*Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## IV.   ARGUMENT

### A.   Strickland is Not Entitled to Qualified Immunity; Mr. Ujiri's § 1983 Cause of Action Against Strickland Survives Motion to Dismiss.

Pursuant to 42 U.S.C. § 1983, Mr. Ujiri asserts a claim against Strickland individually for violation of his Fourth Amendment right to be free from excessive use of force. (Amended Joint Answer and Counterclaim of Ujiri ("Counterclaim") [Dkt. No. 43] ¶¶ 52-62.)   Strickland seeks the protection of qualified immunity as to Mr. Ujiri's claim for excessive use of force.   (Strickland's Motion to Dismiss ["MTD"] at pp. 5-9)   Strickland contends he is entitled to qualified immunity because:  (1) Mr. Ujiri has failed to plausibly allege excessive force, and (2) the law was not clearly established when Strickland violated Mr. Ujiri's constitutional right to be free from excessive force. As explained below, Strickland is not entitled to qualified immunity at this stage because, when the facts are construed in the light most favorable to Mr. Ujiri, it is clear that Mr. Ujiri has adequately pled a clearly established violation of his constitutional right to be free from excessive force.

### 1.   The Law on Qualified Immunity.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow*).   To determine whether qualified immunity applies, the Court decides whether, based on the facts taken in the light most favorable to the party claiming injury, "(1) the officer's conduct violated a constitutional right; and (2) the right which was violated was clearly established at the time of the violation." *Espinosa v. City & Cnty. Of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010).   The Supreme Court has instructed that district courts may "exercise their sound discretion in deciding which of the two prongs of qualified immunity analysis should be addressed first."   *Pearson*, 555 U.S. at 236.   The officer is entitled to immunity if the officer did not violate a constitutional right or if the officer violated a constitutional right that was not clearly established.   *Id.*   Applying this two-step calculus to Mr. Ujiri's excessive force claim, Strickland's assertion of qualified immunity fails.   His disputed actions do not shield him from suit under Section

1983.

2. **Excessive Use of Force.**

a. **Mr. Ujiri's Fourth Amendment right was violated.**

The threshold issue in analyzing Strickland's asserted defense of qualified immunity is whether Mr. Ujiri's constitutional right to be free from excessive force was violated. The Fourth Amendment requires officers to use only such force as is "objectively reasonable" under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). The Ninth Circuit has held repeatedly that the reasonableness of force used ordinarily is a fact question for the jury. *See Liston v. County of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997)*, as amended* (Oct. 9, 1997) (citing *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1322 (9th Cir. 1995)). "[In assessing a qualified immunity defense on a motion to dismiss, a court must 'regard all of the allegations in [the] complaint as true.'" *Hernandez v. City of San Jose*, 241 F.Supp.3d 959, 975 (N.D. Cal. 2017) (quoting *Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999)). "A court should deny a motion to dismiss on the basis of qualified immunity if the complaint 'allege[s] acts to which qualified immunity ***may*** not apply.'" *Id.* (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001))(emphasis added). "In such circumstances, a court may deny a qualified immunity defense without prejudice and after further factual development a defendant may re-raise the qualified immunity issue 'at summary judgment or at trial.'" *Id.* (quoting *Morley*, 175 F.3d at 761); *Life Savers Concepts Assn. of California v. Wynar*, 387 F. Supp. 3d 989, 1002 (N.D. Cal. 2019).

i. **The Facts Alleged in Mr. Ujiri's Counterclaim Establish Excessive Force**

Here, when the facts alleged in Mr. Ujiri's Counterclaim are construed in the light most favorable to Mr. Ujiri, it is clear that a reasonable trier of fact could find that Strickland's use of force was unreasonable. Put differently, when construed appropriately in Mr. Ujiri's favor, his Counterclaim sufficiently alleges "acts to which qualified immunity may not apply." *Hernandez*, 241 F.Supp.3d at 975. This is all that is required at this early stage to defeat Strickland's attempt to shield himself from liability via qualified immunity. *Id.*

For example, to determine whether an officer's use of force was " 'reasonable' under the Fourth Amendment requires a careful balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' " against the countervailing government interests at stake." *Graham v. Connor*, 490 U.S. 386, 395 (1989).   Thus, the question is "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.   When making the reasonableness determination, courts consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (citing *Graham*, 490 U.S. at 296).   The *Kingsley* factors are not exclusive; instead, the Supreme Court expressly cautioned that courts should consider all of the circumstances it deems relevant.   *Id.*

Here, when the facts alleged in Mr. Ujiri's Counterclaim are taken in the light most favorable to Mr. Ujiri, it is clear that a reasonable trier of fact could find Strickland's use of force was unreasonable under the *Kingsley* factors:

(1) *The relationship between the need for the use of force and the amount of force used*:  In his Counterclaim, Mr. Ujiri alleges Strickland shoved him and told him to "back the fuck up" simply because Mr. Ujiri pulled his arm away when Strickland suddenly grabbed him.  (Counterclaim at ¶ 18). After being shoved and cursed at, Mr. Ujiri did not respond aggressively.   *Id.* at ¶ 19.   Instead, he calmly asked Strickland why he had pushed him, informed Strickland he was the Raptors' President, and held up his all-access arena credential to show it to Strickland.   *Id.*   Rather than trying to communicate with Mr. Ujiri, Strickland chose to dismiss Mr. Ujiri's claim that he was the Raptors' President and ignore the credential Mr. Ujiri was trying to show him.   *Id.*   Strickland then forcefully shoved Mr. Ujiri a second time.   *Id.*

From these facts, a reasonable trier of fact could find that given Mr. Ujiri's calm demeanor, good faith attempt to explain who he was and why he was trying to access the basketball court, and his reasonable attempt to show Strickland the high-level security credential he had (which allowed him access to the highly secured areas of Oracle Arena such as the Raptors' locker room), it was not

reasonable for Strickland to forcefully shove Mr. Ujiri once let alone twice.  Moreover, from these facts, a reasonable trier of fact could find that Mr. Ujiri was attempting to comply with Strickland's request to produce his credential and that Mr. Ujiri did not pose an immediate threat to anyone when Strickland forcefully shoved him twice.  A reasonable trier of fact could similarly find, then, that because Mr. Ujiri was attempting to comply and did not pose an immediate threat, no amount of force was reasonable under the circumstances—which means the "relationship between the need for the use of force and the amount of force used" shows Strickland's use of force was unreasonable.  *See Kingsley*, 576 U.S. at 397.

(2) *The extent of the plaintiff's injury*:  That neither Mr. Ujiri nor Strickland were injured during the encounter would not preclude a reasonable trier of fact from finding that Strickland's use of force was unreasonable.  As noted immediately above, when the Counterclaim's factual allegations are construed in the light most favorable to Mr. Ujiri, a reasonable trier of fact could certainly find that no amount of force was reasonably necessary and therefore Strickland's use of force was nonetheless unreasonable despite the lack of injury.

(3) *Any effort made by the officer to temper or to limit the amount of force*:  The facts alleged in Mr. Ujiri's Counterclaim show Strickland made absolutely no attempt to "temper or limit the amount of force" used.  Instead, he shoved and cursed at Mr. Ujiri, ignored Mr. Ujiri's good faith attempt to explain who he was and why he was trying to access the basketball court, ignored Mr. Ujiri's calm attempt to show him his high-level security credential, and instead forcefully shoved Mr. Ujiri a second time.  When construed in the light most favorable to Mr. Ujiri, it is clear that a reasonable trier of fact could find that Strickland did not attempt to temper or limit the amount of force used but instead quickly and unnecessarily resorted to the use of violence against the compliant and non-threatening Mr. Ujiri.

(4) *The severity of the security problem at issue*:  When Mr. Ujiri encountered Strickland, he had a security credential that allowed him to access to virtually every part of Oracle Arena—including the Raptors' locker room and the location he was at when he encountered Strickland.  *See* Counterclaim at ¶ 18.  After Strickland shoved him the first time and cursed at him, Mr. Ujiri did not respond aggressively; instead, he calmly informed Strickland that he was the Raptor's president and tried to show Strickland his security credential.  *Id.* at ¶ 19.  Mr. Ujiri was dressed in a suit and tie when he

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

encountered Strickland, which is customary for NBA executives.  *Id.* at ¶ 25.  It is entirely unreasonable to believe that a man with a security credential that allowed him access to the Raptors' locker room, and who did not respond aggressively after being forcefully shoved but instead calmly explained that he was the Raptors' president (a role that any reasonable person would understand meant he was not a security threat), posed a security threat.  Based on these facts, a reasonable trier of fact could certainly find that Mr. Ujiri did not pose a security threat when Strickland assaulted him.

Moreover, when Strickland encountered Mr. Ujiri, he was under the specific instruction that "the NBA would prefer to allow a person (or persons) onto the court after the game even without the proper security credential if the alternative would result in a security confrontation on the perimeter that would detract from or interfere with the trophy presentation."  (*See* Exhibit 14 to Supplemental Exhibits to Plaintiffs' Opposition to Defendants Motion for Leave to File an Amended Joint Answer and Counterclaim ("Strickland's Supplemental Exhibits") [Dkt No. 44] at NBA00261).  This instruction was given to the Alameda County Sherriff's Office by the NBA's head of security during the Game 6 pre-game security briefing.  *Id.*  A reasonable trier of fact could certainly find that the NBA gave this instruction precisely because it had determined there was not a significant security threat associated with individuals attempting to access the basketball court during the trophy presentation.

(5) *The threat reasonably perceived by the officer*:  When construed in the light most favorable to Mr. Ujiri, the facts alleged in Mr. Ujiri's Counterclaim at, *inter alia*, paragraphs 18 through 24, show that a reasonable trier of fact could find that Mr. Ujiri did not pose a threat to anyone when Strickland assaulted him.  As already explained, paragraphs 18 through 24 of the Counterclaim establish that Mr. Ujiri was calm and attempting to comply with Strickland's request to show him his credential when Strickland assaulted him.  Based on these facts, a reasonable trier of fact could find that Strickland could not have reasonably perceived the compliant and calm Mr. Ujiri as a threat.

(6) *Whether the plaintiff was actively resisting*:  When construed in the light most favorable to Mr. Ujiri, the facts alleged at, *inter alia*,  paragraphs 18 through 24 of the Counterclaim, show that Mr. Ujiri was not actively resisting when Strickland assaulted him.  Instead he was attempting to calmly comply with Strickland's request that he show his credential and calmly explain to Strickland who he was and why he should be allowed on the basketball court.

1

2

As demonstrated above, when the facts alleged in Mr. Ujiri's Counterclaim are taken in the light most favorable to Mr. Ujiri, it is clear that a reasonable trier of fact could find Strickland's use of force was unreasonable under the *Kingsley* factors.  This is all that is required at this early stage to establish the constitutional violation necessary to overcome Strickland's affirmative defense of qualified immunity.

3

4

5

6

### ii. The Video Evidence Shows Strickland's Excessive Force

7

In his MTD, Strickland argues the video evidence submitted with Mr. Ujiri's Counterclaim "confirms his notion of excessive force is not "plausible." *See* MTD at p. 7.  Nothing could be further from the truth and Strickland's erroneous argument is predicated on a complete misrepresentation of the video evidence.

8

9

10

11

For example, Strickland contends the video evidence shows Mr. Ujiri "was initially displaying no credentials whatsoever as he approached the secured court area."  MTD at p. 8.  This is not true.  Strickland's body camera footage clearly shows Mr. Ujiri attempting to pull out his credential as he approaches Strickland.  *See* Ex. 1 to Dkt. No. 43 ("Body Camera")  at 5:08.

12

13

14

15

Strickland contends the video evidence shows Mr. Ujiri "ignored the private security official's request to show his credentials," "disregarded Strickland pointing to the private security official" and "disregarded Strickland's repeated instructions to show his credentials to the private security official." MTD at p. 8.  This is not true.  Strickland's body camera footage clearly shows the private security guard was not even looking at Mr. Ujiri as he approached and that Mr. Ujiri is already attempting to pull his security credential out as the private security guard finally turns his head and becomes aware of Mr. Ujiri. *See* Body Camera at 5:07.  The body camera footage further shows that Mr. Ujiri did not disregard Strickland's "repeated instructions."  Instead, it shows that, in the midst of loud crowd noise, Strickland muttered something like "show him, show him" as Mr. Ujiri is in the process of pulling out his credential and then immediately shoved Mr. Ujiri forcefully in the chest while cursing at him.  *See* Body Camera at 5:07.  In response to Strickland's initial shove, Mr. Ujiri does not respond aggressively but instead tries to explain to Strickland that he is the Raptors' president and tries to show Strickland his security credential.  *Id.*  In response to  Mr. Ujiri's calm attempt to reason with him, Strickland forcefully shoves Mr. Ujiri in the chest a second time.  *Id.*

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Strickland contends the video evidence shows Mr. Ujiri "swatted Strickland's hand away and

2    tried to barge past when Strickland tried to gently direct him back to the private security official by

3    grabbing his elbow." MTD at p. 8. This is an egregious misrepresentation of the video evidence. The

4    Oracle Arena security footage shows that Mr. Ujiri pulled his arm up and away from Strickland after

5    being startled by Strickland's grasp. Mr. Ujiri never "swatted" Strickland's hand. *See* Ex. 1 to Dkt.

6    No. 43 ("Oracle Security Footage") at 1:07-08. Both the body camera footage and the Oracle Arena

7    security footage show that Mr. Ujiri did not try to "barge past" anyone. Instead, knowing he was

8    allowed to be on the basketball court and reasonably believing he would be allowed on the basketball

9    court as Raptors' president, the video evidence shows Mr. Ujiri was in the process of removing his

10   security credential and walking at an unalarming and reasonable pace when he Strickland stopped him

11   by grabbing him and forcefully shoving him backwards.[2] The video evidence shows that Mr. Ujiri did

12   not respond aggressively to Strickland's initial shove or try to "barge past" him, but instead stopped

13   and calmly tried to tell Strickland who he was and calmly tried to show Strickland his security

14   credential.

15       Accordingly, Strickland's characterization of the video evidence as establishing that Mr. Ujiri

16   "actively resisted multiple efforts to investigate his right to court access" is untenable. MTD at p. 8.

17   This is particularly true when the video evidence is appropriately viewed in the light most favorable to

18   Mr. Ujiri. When the video evidence is construed in Mr. Ujiri's favor, it cannot be said that **no**

19   reasonable trier of fact could look at the video evidence and determine that Strickland's use of force

20   was objectively unreasonable. To the contrary, a reasonable trier of fact could undoubtedly find that

21   the video evidence shows Strickland acted objectively unreasonable by assaulting Mr. Ujiri as he

22   attempted to comply with Strickland's instructions. This is all that is required to establish the required

23   constitutional violation at this early pleading stage.

24       Additionally, the video evidence must be viewed in the larger context of what Strickland knew

25   or should have known when he encountered Mr. Ujiri. As noted earlier, we know Strickland was under

26

27   [2] In fact, additional security footage shows that Mr. Ujiri was already on the basketball court at the
     immediate conclusion of Game 6 and prior to his encounter with Strickland. He only exited the

28   basketball court to take a more direct route to meet and embrace his wife who was sitting in the section
     reserved for Raptors' family and friends.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

the specific instruction to "allow a person (or persons) onto the court after the game even without the proper security credential if the alternative would result in a security confrontation."  Ex.14 to Strickland's Supplemental Exhibits at NBA000261.  What other instructions did Strickland fail to follow during his encounter with Mr. Ujiri?  Did Strickland's training require that he attempt to de-escalate conflicts when and if reasonable?  What else did Strickland know at the time of the incident?  Did Strickland reasonably believe Mr. Ujiri heard his alleged "repeated instructions" given the loud crowd noise?  Did Strickland actually know who Mr. Ujiri was when he encountered him?  These are all factual questions that remain unanswered at this early stage and are factual  questions that must be answered to understand the "totality of the circumstances" at play during the encounter shown in the body camera and Oracle Arena security footage.  *See Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) ("totality of the circumstances" must be considered when determining reasonableness of force).  It is not appropriate to grant dismissal or summary judgment when such facts remain unanswered and/or disputed as they do at this early stage.  *See Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)  ("Because [determining reasonableness of force used] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly. *See*, *e.g.*, *Liston v. County of Riverside*, 120 F.3d 965, 976 n. 10 (citing several cases). This is because police misconduct cases almost always turn on a jury's credibility determinations.")

### iii.    It Was Objectively Unreasonable to Assume Mr. Ujiri Posed a Threat

The Ninth Circuit has held that the "most important factor" in determining reasonableness of force used "is whether the suspect posed an 'immediate threat to the safety of the officers or others." *Bryan*, 630 F.3d at 826.  Not surprisingly then, in his motion to dismiss, Strickland goes to troubling lengths to construct a strained argument that he reasonably perceived Mr. Ujiri as an immediate and serious threat.  Specifically, Strickland contends that had he "not employed force, he would have risked having [Mr. Ujiri]...commi[t] any number of possibly serious crimes" including "assaults on players,"

"assaults on coaches," and "even mass murder or terrorism."  MTD at p. 8.  This is a remarkably unreasonable argument for which absolutely no factual support exists.

In reality, it was objectively unreasonable to assume Mr. Ujiri posed a threat.  After Strickland shoved Mr. Ujiri the first time, Mr. Ujiri did not respond aggressively towards him.  *See* Counterclaim at ¶¶ 19-24; Body Camera at 5:13-5:18; Oracle Security Footage at 1:07-09.  Instead, he stopped and calmy tried to explain that he was the Raptors' president and tried to show Strickland his security credential.  *Id.*  Had Strickland examined Mr. Ujiri's security credential when Mr. Ujiri tried to show it to him or seriously considered Mr. Ujiri's claim to be the Raptors' president, he would have quickly realized Mr. Ujiri did not pose a threat to anyone.

To be sure, Mr. Ujiri's credential and his title as Raptors' president allowed him access to such highly secured locations as the Raptors' locker room.  The idea that it was reasonable to assume someone with Mr. Ujiri's level of security clearance posed a threat of harm to players and coaches is absurd.  To show just how ridiculous Strickland's contention is, had Mr. Ujiri wanted to assault players and coaches, or "commit the mass murder of [athletes]" he could have done so in the locker room, there was no need for him to access the basketball court.  Strickland cannot credibly contend he reasonably believed Mr. Ujiri posed a threat of harm to anyone, let alone a serious threat of harm akin to the extremely violent comparisons he attempts to draw in his motion to dismiss.  *See* MTD at p. 8 (comparing Mr. Ujiri to a mass murdering terrorist).

The absurdity of Strickland's contention that he reasonably believed Mr. Ujiri posed an immediate threat of serious harm is highlighted by the NBA's clear instruction that, in order to avoid a security confrontation, Strickland was to allow individuals onto the basketball even if he believed they did not have the proper security credential.  *See* Ex. 14 to Strickland's Supplemental Exhibits at NBA000261.  It is objectively unreasonable to assume the NBA would have given this instruction believing it was putting players and coaches in danger.  Strickland is not entitled to such an irrational inference—and certainly not at this early stage.

Moreover, irrespective of Mr. Ujiri's title as Raptors' president,  Mr. Ujiri's high-level security credential, or the NBA's specific instruction that Strickland was to allow individuals onto the court without the proper credentials to avoid a potentially distracting security confrontation, there were

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

simply no objective indications that Mr. Ujiri posed an immediate threat to anyone.  Strickland's contention that it was reasonable for him to believe Mr. Ujiri posed an immediate threat of harm is as baseless and unsupported as his prior allegation that Mr. Ujiri has a stereotypical "predisposition and propensity for physical violence."  *See* Strickland's Complaint [Dkt. No. 1] at ¶ 25.  As alleged in Mr. Ujiri's counterclaim and shown in the video evidence, Mr. Ujiri gave no objection indication that he posed a threat of harm to anyone when he encountered Strickland, and the facts should not be construed in Strickland's favor at this early stage to find otherwise.[3]  Instead, the facts should be construed in Mr. Ujiri's favor to find that is was objectively unreasonable to assume he posed a threat.  Because the "threat of harm" is the "most important" factor in determining reasonableness of force, it cannot be said that no reasonable trier of fact could find that Strickland's use of force was unreasonable and therefore excessive.  As such, on this point alone, it is clear that Mr. Ujiri has adequately alleged a constitutional violation.

### b.  Mr. Ujiri's Fourth Amendment Right Was Clearly Established.

The second prong of the test for qualified immunity is whether the constitutional right violated was clearly established at the time of the incident.  *See Saucier*, 533 U.S. at 201. "[C]learly established law [is not to be defined] at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Instead, in deciding whether a constitutional right was clearly established at the time of the alleged violation, a court must ask "whether the violative nature of particular conduct is clearly established." *Id.* (emphasis added). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition [.]" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled on other grounds by *Pearson*, 555 U.S. at 236.  In making this determination, courts consider the state of the law at the time of the alleged violation and the

---

[3] In addition to comparing Mr. Ujiri to a mass murdering terrorist, Strickland again attempts to describe Mr. Ujiri in a manner that makes him sound physically imposing and therefore threatening.  For example, Strickland describes Mr. Ujiri as "massive" and points out that he stands 6'4" tall.  MTD at p. 9.  What Strickland conveniently omits, however, is that Strickland is 6'0" tall and outweighs Mr. Ujiri by 50 pounds (Strickland is 260 pounds and Mr. Ujiri is 210 pounds).  Strickland cannot credibly contend he reasonably perceived Mr. Ujiri as threat simply because Mr. Ujiri was slightly taller than him.  Moreover, the video shows that Mr. Ujiri flew back several feet each time Strickland shoved him. If Strickland believes he properly characterized Mr. Ujiri as "massive," then the fact that Mr. Ujiri flew back several feet when Strickland shoved him highlights just how excessive Strickland's use of force was.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

information that the official possessed to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal.  *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007).

At the time of the incident in question, the law was clearly established that any force is unreasonable if no force is needed.  See *Motley v. Parks*, 432 F.3d 1072, 1089 (9th Cir. 2005); *Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001); *Headwaters Forest Def. v. County of Humboldt*, 240 F.3d 1185, 1199 (9th Cir. 2000).  As noted in detail above, drawing all inferences in Mr. Ujiri's favor, a reasonable trier of fact could conclude that Mr. Ujiri was attempting to comply was with Strickland's request to show his credential when Strickland assaulted him and that there were no objectively reasonable indications that Mr. Ujiri posed an immediate threat of harm.  Under the facts alleged in the Counterclaim and depicted in the video evidence, because Mr. Ujiri was complying with the Strickland's orders and did not otherwise present a threat to anyone's safety, there was no need for any force and thus, it was clearly established that Strickland's forceful shoves would be excessive.  *See Motley*, 432 F.3d at 1089; *Fontana*, 262 F.3d at 880; *Headwaters*, 240 F.3d at 1199.  Thus, while it may be that no prior case expressly prohibits the use of the precise force at issue in this case, this general rule against unnecessary force would sufficiently alert a reasonable officer that twice shoving a compliant, non-threatening individual would result in a violation of that individual's constitutional rights.

Strickland does not qualify for immunity from Mr. Ujiri's claim for excessive use of force. The law was clearly established at the time of the encounter and too many disputed fact issues and credibility judgments abound.  This case does not present the rare instance in which dismissal (or summary judgment) on an excessive use of force claim is warranted.  *See, e.g., Santos*, 287 F.3d at 853.  Strickland's motion on this ground therefore should be denied.

### C.      The Requirements and Purpose of the California Tort Claims Act.

Strickland argues that the California Tort Claims Act ("the Act") prevents Ujiri from asserting his claims against Strickland for assault, battery, and intentional infliction of emotional distress.  *See* Dkt. 45, at 5.  In essence, Strickland seeks to take advantage of a procedural rule applicable to public employees, as a shield against Ujiri's claims.

1   The Act requires anyone with a legal claim against a public entity (or public entity employee)

2   to notify that entity in writing before filing a lawsuit against them, within <u>six months</u> of the injury.

3   Gov. Code § 911.2. The public entity then has 45 days to respond with an offer to settle the claim or

4   deny it, at which point the plaintiff is permitted to file suit in court. *See* Gov. Code § 910 *et seq*. This

5   procedural rule gives public entities the chance to investigate and resolve disputes, and potentially

6   avoid litigation if appropriate. *See City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 741

7   ("Prior notice of claims serves the purpose of facilitating investigation and possible settlement.")

8   Those wishing to sue public entities can be entirely prevented from doing so if they do not

9   follow these procedural rules.  However, so long as the core purpose behind the Act – notice to the

10   entity and a chance to investigate and resolve claims prior to litigation – is achieved, courts will permit

11   claims to proceed.  Substantial, not strict compliance with the Act's mandate is the proper standard.

12   *Cory v. City of Huntington Beach* (1974) 43 Cal.App.3d 131, 136 ("[W]here the statutory purpose has

13   been realized by other means, strict compliance has not been required.");*White v. Moreno Valley*

14   *Unified School Dist*., 181 Cal.App.3d 1024, 1031 (1986) (stating that, for substantial compliance "the

15   court must ask whether sufficient information is disclosed . . .  to reasonably enable the public entity

16   to make an adequate investigation of the merits of the claim and to settle it without the expense of a

17   lawsuit"); see also *Phillips v. Desert Hospital Dist*., 49 Cal.3d 699, 700 (1989).

18   Strickland argues that Mr. Ujiri's state tort claims should be dismissed for his failure to comply

19   with the Act's procedural rules before bringing his claims.  Strickland raises this argument for the first

20   time nearly <u>seventeen months after</u> the Game 6 encounter. This argument is being made, intentionally,

21   after the deadline for Ujiri to comply with the deadlines in the Act, which is now impossible for him

22   to do as they have long passed. *See* Gov. Code §§ 911.2; 910 *et seq*. But the spirit and purpose of the

23   Act have been fulfilled. Strickland's attempts to use his status as a public law enforcement officer as a

24   shield against Ujiri's claims should not be credited and his efforts to dismiss meritorious claims on a

25   procedural grounds should be denied. *See City of Stockton v. Superior Court* (2007) 42 Cal.4th 730,

26   744.

27

28   / / /

### 1.  The Act Does Not Apply to Defensive, Compulsory Counterclaims, When the Public Entity is the First Complainant

Both state and federal courts have logically found that counterclaims brought in defense of a public entities' case should not be barred by the Act's presentment requirements. Put simply, "it is manifestly unjust to allow a [public entity] to bring a suit . . . then to use what amounts to a notice statute to shield itself from a cross-complaint asserted by the defendant in the same suit" arising from the same facts. *San Diego Unified Port Dist. v. Underwriters at Lloyd's, London and other London Market Insurers* (S.D. Cal., Aug. 28, 2015, No. 15-CV-00022-WQH-JLB) 2015 WL 5117047, at *5 (citing *People ex rel. Dep't of Parks and Recreation v. West–A–Rama, Inc.*, 35 Cal.App.3d 786, 794, 111 Cal.Rptr. 197 (1973).

A counterclaim against a public entity plaintiff may be pursued without a previously filed tort claim if it arises out of the same transaction that forms the basis of the public entity's complaint. *See People ex rel. Dept of Parks and Recreation v. West-A-Rama, Inc*., 35 Cal.App.3d 786, 794 (1973) ("*West-A-Rama*"). That is precisely the case here. Mr. Ujiri filed his counterclaim in immediate response to the claims against him, and because he was required to: his claims arose from the same transaction or occurrence and if he did not bring them now, he would be waived from doing so in the future. Fed. R. Civ. Proc. 13(a)(1)(A) ("A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim").

The *West-A-Rama* court found the tort claims statutes "**are simply notice statutes**, the purpose of which is to permit the governmental entity against whom the claim is asserted to investigate promptly and to have an opportunity to settle without litigation."[4] As aptly found by Judge White in the Northern District of California:

> the principles and law supporting the enforcement of claims notice rules **does not apply when the government agency sues in the first instance**. The core purpose of the claims procedure is to give the governmental entity an opportunity to settle just claims

---

[4] The court further found that "Presumably, [the] state has already made the decision that the claim should not be settled, since State itself decided to litigate. . . [since] the purposes of the claims statutes have been satisfied, there is no reason to insist upon compliance with the claims statutes as a prerequisite to West-A-Rama's cross-complaint for monetary damages . . ." *West-A-Rama, Inc.* 35 Cal.App.3d 786, 794 (1973)  (citations omitted).

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

before suit is brought, and to permit the entity to make an early investigation of the facts on which a claim is based, thus enabling it to defend itself against unjust claims and to correct the conditions or practices which gave rise to the claim.

*San Francisco Bay Area Rapid Transit v. GE Transp. Systems Global Signaling LLC* (N.D. Cal., May 27, 2010, No. C 06-03749 JSW) 2010 WL 2179769, at *3 (citations omitted)

Here, even if the Act did apply to this unique situation (it does not, *see* Section B.2., *infra*), its spirit and purpose have clearly been fulfilled.  Both Strickland and his employer, the Alameda County Sheriff's Office ("ACSO") had near-immediate notice of the facts underpinning the encounter between Strickland and Ujiri, and ample opportunity to investigate the attendant circumstances surrounding the encounter.  Indeed, the ACSO began investigating within a week of the encounter, completing a 20-page incident report eight days after Game 6. *See* Ex. 1, Dkt. No. 37-1 ("Decl. of B. Beyler ISO Plaintiffs' Opp. to Def. Motion for Leave to Amend").  The ACSO Incident report demonstrates the thorough nature of ACSO's investigation, and contains detailed findings and photos, stating that Strickland was victim to "battery on a peace officer."  *Id.*  As this report makes clear, the ACSO was immediately on notice of the details of the encounter, and thoroughly investigated it, at least eight months before Strickland initiated this case.

Separate from the ACSO's investigation, Strickland also presumably investigated the facts underlying his claims in the eight months it took him to file it. Indeed, if his claims against Ujiri were brought in good faith, he had a *duty* to diligently investigate the attendant facts before filing suit. Strickland suffered no prejudice in failing to receive notice under the Act of Ujiri's counterclaim.

### 2.    The Act's Requirements Only Apply to Claims for Money or Damages.

The Act's claim presentment requirements apply only to claims for monetary damages.  *Pacific Gas and Elec. Co. v. City of Union City* (N.D. Cal. 2002) 220 F.Supp.2d 1070, 1077 ("Injunctive and declaratory relief is exempt from the CTCA.") see also *Qwest Communications Corp. v. City of Berkeley*, 146 F.Supp.2d 1081, 1090–91 (N.D.Cal.2001) (same).[5]  Mr. Ujiri is claiming only nominal damages for his assault and battery claims; and does not seek any of the damages customarily

---

[5]  The types of relief excluded from the tort claim requirements include declaratory relief, *Otis v. City of Los Angeles*, 52 Cal.App.2d 605 (1942), specific relief such as the recovery of particular property, *Holt v. Kelly*, 20 Cal.3d 560 (1978), mandamus actions, *County of Sacramento v. Lackner*, 97 Cal.App.3d 576, 587 (1979), abatement of nuisance by injunction, *Los Angeles Brick & Clay Prods. Co. v. City of Los Angeles*, 60 Cal.App.2d 478 (1942) among others.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

1    recoverable for such claims, like compensatory, general, special, or other categories of harm. *See* Dkt.

2    43, ¶¶ 71; 77. In this manner, these compulsory claims are defensive, and the Act should not bar them.

3            While Mr. Ujiri seeks punitive damages claim arising from his claim for intentional infliction

4    of emotional distress, it is well known that public entities are immune from such damages. Civ. Code

5    § 3294; Gov. Code § 818. However, whether a public employee is considered to have been acting

6    within the scope of his employment, and whether or not punitive damages can be recovered against

7    him, are additional factual issues inappropriate for disposition at the pleadings stage. *Austin v. Regents*

8    *of University of California* 89 Cal.App.3d 354 (1979).[6] And Mr. Ujiri's punitive damages claim in his

9    prayer for relief arise from his Section 1983 claim, which is exempted from the tort claim requirements

10   and for which public entities and employees are liable. *See Williams v. Horvath*, 16 Cal.3d 834, 842

11   (1976) (The pre-lawsuit claim requirement of the Government Claims Act [Gov. Code §§810-996.6,

12   formerly called the Tort Claims Act] does not apply to claims asserted under federal law).

13           In sum, the Act's claim presentment requirement is simply not applicable to this unique case.

14   Ujiri's compulsory claims against Strickland are defensive in nature.  But to the extent this is unclear,

15   Mr. Ujiri seeks leave to amend his counterclaim to further clarify that his claim for intentional infliction

16   of emotional distress, along with his other state tort claims, are defensively pled, do not seek monetary

17   damages, and therefore not within the gambit of the Act.

18           **3.    Plaintiff Strickland Should be Estopped from Using the Tort Claims Act as
                     a Shield**

19

20           The Act specifically exempts late filings when "the failure to present the claim was through

21   excusable neglect and the public entity was not prejudiced in its defense of the claim by the failure to

22   present the claim within the applicable deadline. Gov. Code 911.6(a)(1).  A public entity can also be

23   estopped from barring such a claim, if the entity prevented or deterred the filing of a tort claim.

24   *Christopher P. v. Mojave Unified School Dist.*, 19 Cal.App.4th 165 (1993).  This principle is "well-

25   settled."  *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 744; *John R. v. Oakland Unified*

26   *School Dist.* (1989) 48 Cal.3d 438, 445; *Ortega v. Pajaro Valley Unified School Dist.* (1998) 64

---

27   [6] For example, if further discovery revealed, and a jury found, that Strickland was not acting within the
28   course and scope of his employment as an Alameda County Sheriff at the time of the encounter, he
     would presumably be excluded from the Act's requirements entirely.

1  Cal.App.4th 1023, 1044–1045 (citing cases);  *see also Johnson v. San Diego Unified School Dist.*, 217

2  Cal.App.3d 692, 700-01 (1990) (stating that estoppel requires proving, inter alia, that the public entity

3  was apprised of the facts). *See also Santos v. Merritt College* (N.D. Cal., July 1, 2008, No. C-07-5227

4  EMC) 2008 WL 2622792, at *4.

5          As explained above, Plaintiff Strickland waited over <u>eight months</u> to file his claim.  He waited

6  another <u>four months</u> to produce the body camera video footage from that evening, which for the first

7  time made clear he was the first aggressor. And Strickland also conveniently omitted this argument

8  when Mr. Ujiri asked the court to file his counterclaim last month. *See* Dkt. No. 37 (Plaintiff's

9  Opposition to Ujiri's Motion for Leave to Amend Answer and Add Counterclaim).  Instead, he wanted

10  almost <u>seventeen months</u> after the encounter to raise this issue for the first time.

11          Conversely, Mr. Ujiri filed his compulsory counterclaim diligently as he was required to do, in

12  response to viewing Strickland's body camera footage which revealed Strickland as the initial

13  aggressor. *See* Fed. R. Civ. Proc. 13(a)(1)(A). His claims should not be dismissed on a procedural set

14  of rules inapplicable to these facts.

15          In sum, the purpose of the Act is to promote settlement prior to formal litigation. But this

16  purpose is instantly mooted when, as here, the public employee himself itself initiates suit.  Even if

17  Ujiri had made a pre-lawsuit claim under the Act, his filing would have been futile and his failure to

18  do so should not preclude him from bringing his defensive claims now.

19  **V.      CONCLUSION**

20          Mr. Ujiri's claims are not appropriately dismissed at this juncture for the foregoing reasons.

21  Strickland's motion should be denied.  In the alternative, Mr. Ujiri respectively request the Court grant

22  him leave to amend his Counterclaim consistent with the Court's order.

23  Dated:  October 19, 2020                    Respectfully submitted,

24                                              **COTCHETT, PITRE & McCARTHY, LLP**

25                                              By: ___*/s/ Emanuel B. Townsend*_____

26                                                  JOSEPH W. COTCHETT
                                                    EMANUEL B. TOWNSEND
27                                                  TAMARAH P. PREVOST

28                                                  *Attorneys for Defendant and Counterclaimant*
                                                    *Masai Ujiri*