1 MATTHEW M. GRIGG, SBN 195951
     mmg@grigglegal.com
2 **LAW OFFICES OF MATTHEW M. GRIGG**
1700 N. Broadway, Ste. 360
3 Walnut Creek, CA 94596
510-703-4576
4

5 Co-Counsel for Plaintiff/Counter-Defendant Alan Strickland

6

7

8 **UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA**

9

10 ALAN STRICKLAND, et al.,                )   Case No.: 20-cv-000981-YGR
                                          )
11              Plaintiffs,               )   **PLAINTIFF/COUNTER-DEFENDANT**
                                          )   **ALAN STRICKLAND'S REPLY TO**
12 v.                                     )   **OPPOSITION TO MOTION TO DISMISS**
                                          )
13 MASAI UJIRI, et al.                    )
                                          )   **Date:   November 17, 2020**
14              Defendants,               )   **Time:  2:00 p.m.**
                                          )   **Via:    Zoom**
15 _____ )   **Judge: Hon. Yvonne Gonzalez Rogers**
                                          )
16 and Related Counteraction.             )
                                          )
17 _____ )

18

19

20

21

22

23

24

25

26

27

28

# **Table of Contents**

I.   **Introduction** .................................................................................................. 1

II.  **Mr. Ujiri's Attempt To Evade Qualified Immunity Is Factually And Legally Untenable**.................................................................................................. 1

A.   Legally Irrelevant Considerations, Conclusory Allegations, And Allegations Refuted By Exhibits Cannot Generate A Plausible Claim…………………………………  1

B.   Facts Not Alleged And Theoretical Factual Disputes Do Not Preclude Granting Qualified Immunity On A Motion To Dismiss…………………………………… 7

C.   Mr. Ujiri Has Not Met His Burden Of Showing That Every Single Reasonable Deputy Would Have Known "Beyond Debate" That "Any" Use Of Force Ostensibly Was Unconstitutional……………………………………………….. 9

III. **Mr. Ujiri's Attempts To Salvage His State Law Counterclaims Rely On Mischaracterizations Of Governing Law**……..…………………………………  11

A.   That Deputy Strickland Initiated This Lawsuit Does Not Exempt Mr. Ujiri From Compliance With The Claims Presentation Statues ……………………………..  11

B.   The "Substantial Compliance" Doctrine Is Inapplicable…………………………  13

C.   No Basis For "Estoppel" Exists………………………………………………..  13

D.   Mr. Ujiri's Arguments That The Counterclaims Are Not For "Money Or Damages," And Related Arguments Are Legally Untenable …………………………………..  14

V.   **Conclusion**…………………………………………………………………  15

# **Table of Authorities**

*Austin v. Regents of Univ. of Cal.*, 89 Cal.App.3d 354 (1979)…..................................... 15

*Barkley v. City of Blue Lake*, 47 Cal.App.4th 309 (1996)…. .......................................... 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................. 4, 15

*Chavez v. United States*, 683 F.3d 1102 (9th Cir. 2012)…………………………………….. 1, 2

*City of Stockton v. Sup. Ct.*, 42 Cal.4th 730 (2007) ...............................................11-13

*D.C. v. Wesby*, 138 S.Ct. 577 (2018) ....................................................................... 9

*DiCampli-Mintz v. County of Santa Clara*, 55 Cal.4th 983 (2012) ............................... 14

*Fazaga v. FBI*, 916 F.3d 1202 (9th Cir. 2019) ............................................................ 1

*Feldman v. Boman*, 518 F.3d 637 (9th Cir. 2008) ..................................................... 15

*Ferguson v. Cal. Dept. of Justice*, Case No. 16-cv-06627-HSG, 2017 WL 2851195

   (N.D. Cal. July 4, 2017) ...................................................................................... 7

*Fontana v. Haskin*, 262 F.3d. 871 (9th Cir. 2001) ............................................. 7, 9, 10

*Graham v. Connor*, 490 U.S. 386 (1989) ...................................................1, 4, 6-7, 10

*Johnson v. City of Los Angeles*, 134 Cal.App.2d 600 (1955) ..................................... 13

*Krainock v. Sup. Ct.*, 216 Cal.App.3d 1473 (1990) .............................................. 11, 13

*Lowry v. City of San Diego*, 859 F.3d 1248 (9th Cir 2017) ........................................... 5

*McDonald v. Haskins*, 966 F.2d 292 (7th Cir. 1992) ................................................... 9

*Motley v. Parks*, 432 F.3d 1072 (9th Cir. 2005) ...................................................... 10

*Mullenix v. Luna*, 577 U.S. __, 136 S. Ct. 305 (2015) .............................................. 11

*Munoz v. State*, 33 Cal.App.4th 1767 (1995) .......................................................... 14

*Nat. Assn. of Mfrs. v. Dept of Defense*, 138 S. Ct. 617 (2018) ................................. 14

*Natl. Treasury Emps. Union v. Von Raab*, 489 U.S. 656 (1989) ................................... 6

*Ortega v. Pajaro Valley Unified School Dist.*, 64 Cal. App. 4th 1023 (1998) ............... 14

*People ex rel. Dept. of Parks and Rec. v. West–A–Rama, Inc.*, 35 Cal.App.3d 786 (1973) ......11-12

*Petersen v. Vallejo*, 259 Cal.App.2d 757 (1968) ..................................................... 14

*Roth v. Garcia Marquez*, 942 F.2d 617 (9th Cir. 1991).................................................... 1, 7

*Santos v. Gates*, 287 F.3d 846 (9th Cir. 2002) ............................................................. 9

*Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194 (9th Cir. 1998) ..................................... 8

*Scott v. Cty. of San Bernardino*, 903 F.3d 943 (9th Cir. 2018) ...................................... 10

*Scott v. Harris*, 550 U.S. 372 (2007) ........................................................................ 6

*Stromberg, Inc. v. Los Angeles Flood Control Dist.*, 270 Cal.App.2d 759 (1969) ................... 13-14

*TrafficSchoolOnline, Inc. v. Clarke*, 112 Cal.App.4th 736 (2003) ................................. 14

*U.S. v. Lanier*, 520 U.S. 259 (1997) .......................................................................... 10

# I. Introduction

Mr. Ujiri attempts to avoid dismissal of his counterclaims with conclusory allegations, factual characterizations that clash irreconcilably with his exhibits, and misinterpretations of case law. Proper scrutiny of his arguments in light of a legally appropriate interpretation of fact and law confirms his counterclaims should be dismissed without leave to amend.

## II. Mr. Ujiri's Attempt To Evade Qualified Immunity Is Factually And Legally Untenable

A.   Legally Irrelevant Considerations, Conclusory Allegations, And Allegations Refuted By Exhibits Cannot Generate A Plausible Claim

Though qualified immunity's dispositive effect based on the second prong of the analysis is perhaps even clearer (as is illustrated in Section II(C) below) it also is evident from proper analysis of whether Mr. Ujiri has plausibly alleged unconstitutional force in the first place. He has not.

Mr. Ujiri's insistence that he has plausibly alleged unconstitutional force appears premised largely on his insistence that the Court "must regard *__all__* of the allegations of the complaint as true." *Id*. at 7:10-12 (emphasis added). He thus reiterates his counterclaim's conclusory and inaccurate allegations at length in his "factual allegations" section and elsewhere. *See* Ujiri Opposition (hereafter "Opp.") at 2:7, *et seq*. But his reliance on this general legal rule is misplaced:

- It disregards the legal reality that conclusory allegations and unreasonable inferences must be "discount[ed]." *See*, *e.g*., *Chavez v. United States*, 683 F.3d 1102, 1110 (9th Cir. 2012); *Fazaga v. FBI*, 916 F.3d 1202, 1211 (9th Cir. 2019) ("Conclusory allegations and unreasonable inferences…are insufficient to defeat a motion to dismiss.")

- It also disregards that even ostensibly factual allegations are properly disregarded when – as is often the case here – an exhibit to a counterclaim refutes them. *See*, *e.g*., *Roth v. Garcia Marquez*, 942 F.2d 617, 625, n. 1 (9th Cir. 1991).

Mr. Ujiri also focuses on his subjective beliefs and perspectives rather than on what the facts show Deputy Strickland reasonably perceived. *Cf. Graham v. Connor*, 490 U.S. 386, 397 (1989) ("reasonableness" must be "judged from the perspective of a reasonable officer on the scene").

Revisiting the facts chronologically in light of Mr. Ujiri's arguments and proper application of governing law reconfirms the implausibility of the notion of unconstitutional force. It also helps

demonstrate why, as demonstrated in Section II(C) below, this is not one of the "rare" and "obvious" cases of egregious conduct in which a general rule establishes particular conduct's ostensible unconstitutionality conduct "beyond debate."

To begin with, Mr. Ujiri cites his allegation that he "was authorized" to enter the secured court area. Opp. 2:25-26. But that allegation is conclusory and thus must be "discounted." *See Chavez*, 683 F.3d at 1110. Regardless, and more importantly, such a conclusion does not plausibly indicate that Mr. Ujiri displayed any credential reflecting proper authorization at any time relevant. *See* Exh. 1(c);[1] Counterclaims (ECF Doc. 43). He did not.

Mr. Ujiri insists Deputy Strickland's assertion that he was not displaying any credentials as he approached the security checkpoint is "not true." Opp., 11:11-12. However, as Mr. Ujiri's videos confirm, that he was <u>not</u> displaying any credentials as he approached is indisputable. *See* Exh. 1(a) at 0:57-1:07; Exh. 1(c) at 0:05-0:07.

Mr. Ujiri argues the video "*clearly shows the private security guard was not even looking at Mr. Ujiri as he approached.*" Opp., 11:18-19. But the video shows that is *exactly* what the private security official (hereafter "AES official") was doing. Exh. 1(c) at 0:07-0:08; Exh. 1(a) at 1:04-1:05. Deputy Strickland pointed his finger at the individual later identified as Mr. Ujiri to alert the AES official to Mr. Ujiri's approach, and the AES official whipped his heard around to look directly at Mr. Ujiri. *Id.*  Mr. Ujiri did not remove any credential from his jacket pocket until *after* he passed the AES official. Exh. 1(c) at 0:09. The AES official stepped to his right, toward Deputy Strickland, to try to slow Mr. Ujiri's advance and inspect his credentials. Exh. 1(a) at 1:06-1:07. The AES official asked to see Mr. Ujiri's credential "real quick," but Mr. Ujiri did not stop, or give any indication that he was willing to show whatever (invalid) credential he may have been pulling from his pocket to the AES official or Deputy Strickland – even after Deputy Strickland pointed directly at the AES official and unequivocally instructed Mr. Ujiri to "*Show him. Show him!*" Exh. 1(c) at 0:05-0:10; Exh. 1(a) at 1:00-1:10. Mr. Ujiri argues that Deputy Strickland only

---

[1] For ease of reference, Deputy Strickland again will refer to Mr. Ujiri's three video exhibits as Exh. 1(a) (arena video), Exh. 1(b) (body cam video), and Exh. 1(c) (short body cam video).

"*muttered something like [that]*" (Opp., 11:23) but the video confirms Mr. Ujiri's notion of inaudibility is not plausible. Exh. 1(c) at 0:08-0:10.

When Deputy Strickland gently grasped Mr. Ujiri's elbow to try to redirect him back to the AES official, Mr. Ujiri's disregard continued, by swatting or brushing Deputy Strickland's hand away. Mr. Ujiri insists that "swatting" is an "egregious misrepresentation" (Opp., 12:2-3) – but it is one evident from the video and corroborated by his own eyewitness. *See* Exh. 1(a) at 1:06-1:07; Counterclaim Exh. 2) (ECF-Doc. 43, p. 41, ¶3) ("*I witnessed Deputy Strickland put out his arm and touch Mr. Ujiri. I witnessed* **Mr. Ujiri then brush Deputy Strickland's arm away**.") (Emphasis added). Regardless, Mr. Ujiri's abrupt resistive movement and simultaneous continued attempt to walk by or through Deputy Strickland (*see* Exh. 1(a) at 1:06-1:08) clashes irreconcilably with Mr. Ujiri's insistence now that he was calmly compliant. *See id.*

Mr. Ujiri argues that Deputy Strickland then pushed him and ordered him to back the fuck up "*simply because Mr. Ujiri pulled his arm away.*" Opp., 8:17-18. But this too is implausible. Video confirms Deputy Strickland was responding to Mr. Ujiri's steadfast and repeated disregard of multiple attempts by him and the AES official to check the propriety of permitting Mr. Ujiri to access the secured court area. Though Mr. Ujiri now insists otherwise, his exhibits confirm that other reasonable deputies in Deputy Strickland's position likewise could have perceived a man:

1.  who was approaching the restricted court area without displaying any credentials,
2.  who ignored the AES official's request to show credentials,
3.  who disregarded Deputy Strickland pointing to direct his attention to the AES official,
4.  who disregarded Deputy Strickland's repeated order to show his credentials, and
5.  who forcefully swatted or "brush[ed]" Deputy Strickland's hand away and continued to try to barge past when Deputy Strickland gently grabbed his elbow to try to redirect him back to the AES official.

*See* Exh. 1(c) at 0:05-0:10; Exh. 1(a) at 1:01-1:07. Despite all this, Mr. Ujiri now insists it was unreasonable for Deputy Strickland to perceive any need for any force whatsoever.

In this regard, Mr. Ujiri repeatedly feigns indignance about Deputy Strickland supposedly equating him with a "mass murdering terrorist." But Deputy Strickland did no such thing. The

motion simply points out the obvious and undisputed reality that a wide range of public safety and other threats, are present at high-profile, international sporting events like the decisive game of the NBA finals, such that compelling public safety reasons existed for diligently enforcing security restrictions.[2] The motion did not assert that Mr. Ujiri necessarily posed such threats, only that they existed. But that underscores a key point. Mr. Ujiri repeatedly prevented Deputy Strickland and the AES official from investigating to what extent he may have posed any threat to property rights or public safety. Exh. 1(c) at 0:05-0:20; Exh. 1(a) at 1:05-1:16.

Mr. Ujiri offers the related argument that it was unreasonable to suspect that he might have posed any risk because he was a team president and had a credential allowing access to a locker room. Opp., 14:10-11. But he thereby again tries to evade the legal requirement that we must view the facts from Deputy Strickland's perspective. And no facts suggest that Deputy Strickland knew Mr. Ujiri or anything about him, because he did not, and Mr. Ujiri would not show him any credential. *Cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, at n. 8 (2007) ("It is [improper] to assume that [a claimant] can prove facts that it has not alleged….") Thus, Deputy Strickland was faced with an unknown individual who repeatedly and actively resisted extensive efforts to persuade him to stop and show credentials. As commonsense dictates, when an individual is thus persistently noncompliant with something as simple as a quick credential check, this increases the index of suspicion that a suspect might pose some sort of threat, even if the full nature and extent of the threat cannot immediately be ascertained. Mr. Ujiri's insistence that no use of any force whatsoever was reasonable thus is factually and legally untenable. *See also Graham*, 490 U.S. 386, 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an… investigatory stop necessarily carries with it the right to use some degree of physical coercion…to effect it.") Mr. Ujiri argues he was not "acting aggressively" – but that is irrelevant since some

---

[2] As would seem self-evident, this is why numerous security officials were present, along with city and county law enforcement personnel, and the FBI. This is why security officials were encircling the court at the game's end, and why Deputy Strickland and his canine partner had been tasked with searching the arena for bombs before the game.

suspects self-evidently could try to act calmly, or perhaps wear a fancy suit, when trying to breach security to attempt to minimize suspicion.[3]

To prevent the security breach, Deputy Strickland pushed Mr. Ujiri in the chest. Mr. Ujiri insists he "*made absolutely no attempt to 'temper or limit the amount of force used.'*" Opp., 9:16. But his insistence again clashes irreconcilably with video. Deputy Strickland did not shoot Mr. Ujiri, tase him, employ OC spray, strike him with a baton, tackle him, strike him with a fist, or even make contact in a sensitive area such as the face, neck, or groin. Instead – even though peace officers "are not required to use the least intrusive degree of force possible" (*Lowry v. City of San Diego*, 859 F.3d 1248, 1259 (9th Cir 2017)) – that is *exactly* what Deputy Strickland did. He used a simple open-handed shove to Mr. Ujiri's chest. Mr. Ujiri repeatedly claims that he "*flew backward several feet*" (Opp., 15:27-28) but the video confirms he only took a couple steps backward, without "*flying.*" Exh. 1(a) at 1:08-1:09. Particularly in light of Mr. Ujiri's massive size (an athletic 6'4", 210 lbs.) it is self-evident that the push was calculated to cause no injury and thus caused *none*. Opp, 9:9-11 (admitting that "*Mr. Ujiri [was not] injured during the encounter*").

Mr. Ujiri argues that, after the push, he calmly attempted to comply with Deputy Strickland and the AES official's instructions by showing them credentials. But the video confirms otherwise. At that moment, an unknown individual to Deputy Strickland's left began rapidly shouting something like "*Hey! Hey! Hey! Hey! Hey! [unintelligible] Please, please, please.*" Exh. 1(c) at 0:12-17; Exh. 1(a) at 1:09-1:13. While this person was shouting in Deputy Strickland's ear and grabbing him, Mr. Ujiri said something unintelligible and then something to the effect that he was "president of the Raptors." But, despite the AES official and Deputy Strickland's extensive efforts to persuade him to stop and permit inspection of his credentials, and Deputy Strickland even using profanity to underscore the situation's gravity, he *still* did not stop or permit inspection by either Deputy Strickland or the AES official. He instead only inexplicably flashed his (invalid) credential

---

[3] Though not appropriately factored into this motion's disposition, it is of interest that the NBA specifically advised security staff to be alert to persons impersonating others and using false credentials to access secured areas, as it has experienced such problems previously. But this does underscore that, as a matter of judicial experience and common sense, wearing a fancy suit does not indicate that a person's intentions are innocent or that he necessarily has the right to access secure areas despite lacking or displaying proper credentials.

*at the unknown individual* – and again tried to barge past while the unknown individual pulled Deputy Strickland backward. Exh. 1(a) at 1:11-1:13. Mr. Ujiri thus gave Deputy Strickland no opportunity to process or confer about his unsubstantiated claim and, more importantly, no opportunity for him or the AES official to check credentials. *See id.*[4] Mr. Ujiri's insistence that he was "not actively resisting" security efforts thus again clashes with the videos. *See id.* With Mr. Ujiri thus demonstrating repeated and persistent noncompliance, and due to the unabated risks accompanying an unauthorized security breach as Mr. Ujiri continued to try to circumvent the security checkpoint, Deputy Strickland pushed Mr. Ujiri again. Exh. 1(a) at 1:12. In so doing, he again used the least amount of force practicable, an open-handed push to the chest. Like the first, the second push was calculated to cause no injury and thus caused none. *Id.*; Opp, 9:9-11. Mr. Ujiri argues he again "flew back several feet" (Opp., 15:27-28) but the video confirms he took only 1-2 steps backward without any "*flying.*" Exh. 1(a) at 1:13.

Consequently, the facts evident from the counterclaims and exhibits, and inferences permissibly deducible therefrom, confirm the absence of any plausible notion of unconstitutional force. On the one hand, we have "the paramount governmental interest in ensuring public safety," along with interests in protecting property rights. *See Scott v. Harris*, 550 U.S. 372, 383 (2007); *Natl. Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 677 (1989) (recognizing "compelling interests in…public safety"). On the other, we have the use of the least amount of force practicable to achieve those compelling aims. *Cf. Graham*, 490 U.S. 386, 396 (investigatory stops include

---

[4] Mr. Ujiri repeatedly urges the Court to consider an exhibit to an unrelated filing containing statements by an NBA security official. Because the statements are not part of the counterclaims or exhibits thereto, they are not appropriately considered now. But the responses only further confirm Deputy Strickland's reasonableness, because they confirm that security personnel were specifically instructed that "**_only people with the orange armband…[were to] be allowed onto the court_**." ECF-Doc. 44 at p. 9 (emphasis added). Thus, even if Deputy Strickland had known Mr. Ujiri had been a team president, that would not mean that Mr. Ujiri (who wore no armband) was allowed onto the court. It also would not necessarily mean that Mr. Ujiri not recently been fired and become a disgruntled ex-employee and/or that the NBA had not recently revoked his authorization and/or credentials for post-game floor access for other security reasons.

right to use at least some force); *Fontana v. Haskin*, 262 F.3d. 871, 880 (9th Cir. 2001) (recognizing *de minimis* force is not unconstitutional).[5]

B.   Facts Not Alleged And Theoretical Factual Disputes Do Not Preclude Granting Qualified Immunity On A Motion To Dismiss

Though qualified immunity should be decided "at the earliest possible stage in litigation" (*Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017)), Mr. Ujiri urges the court to postpone the analysis until trial. To that end, he argues force's reasonableness is "ordinarily a fact question for the jury." Opp., 8:7-8, 13:18-19. However, though assessing officers' reasonableness *is* typically fact-intensive, "this does not erase the basic requirement that Plaintiffs **must** plead sufficient facts to state a facially plausible claim." *See Ferguson v. Cal. Dept. of Justice*, Case No. 16-cv-06627-HSG, 2017 WL 2851195, at *4 (N.D. Cal. July 4, 2017) (emphasis added).

Moreover, Mr. Ujiri exhibits create an unusual, if not unprecedented, situation in which we can consider video in the context of a motion to dismiss. And, as illustrated above, the video confirms the implausibility of the notion of unconstitutional force, and thereby forecloses an interpretation of the facts that would prevent dismissal. *See Roth,* 942 F.2d at n. 1; *cf. Scott v. Harris*, 550 U.S. 372 (2007) (concluding lower court erred in failing to find no unreasonable force at summary judgment stage by construing facts in the plaintiff's favor rather than "in the light depicted by the videotape.") With the hopes of avoiding dismissal, or perhaps of obtaining leave to amend, Mr. Ujiri argues that there are "acts to which qualified immunity may not apply" because a

---

[5] The reasonableness calculus's outcome becomes even more glaringly obvious when we consider that – unlike the reader, who can with the added benefit of hindsight closely scrutinize the three video exhibits repeatedly for hours, including via freeze-framing and slow motion – Deputy Strickland had no such luxury. He had only a few *seconds* to analyze the need for and amount of force warranted, including amid the escalating and uncertain chaos that included a noncompliant individual repeatedly trying to barge past him without showing credentials and another unknown man repeatedly shouting at him, grabbing him, and pulling him backward. *See* Exh. 1(a) at 1:06, *et seq.*; Exh. 1(c) at 0:06, *et seq.* Though Mr. Ujiri pointedly avoids addressing this factor, it is one we "must" consider. *Graham*, 490 U.S. at 396-397 ("[A]ll determinations of unreasonable force **must** embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.") (Emphasis added).

---

trier of fact ostensibly could find unreasonableness. Opp., 7:13-27. But, as is illustrated above and further below, he has not offered "facts" that would plausibly support that notion.

To attempt to contort his implausible notion of unconstitutional force into a plausible one, Mr. Ujiri next argues Deputy Strickland was "under the specific instruction" to allow people onto the court without proper credentials if not doing so would result in any "security confrontation." Opp., 12:25-13:2, citing ECF-Doc. 44 at p. 9. But Mr. Ujiri's implicitly proposed inference that a reasonable deputy would have known this and concluded any use of force was unconstitutional is unreasonable and thus impermissible for numerous reasons.

First, the purportedly "specific instruction" was not an "instruction." It instead was what an NBA security official (Mr. Pickett) claimed had been said during security briefings regarding "what the NBA would *prefer*." ECF-Doc. 44 at p. 9 (emphasis added). Second, Mr. Pickett represented that the "preference" was to apply *only* during "the trophy presentation, which would be broadcast live" (*see id*.) – whereas the Mr. Ujiri's attempts to circumvent security preceded the trophy presentation. *See* Exh. 1(a). Third, no facts suggest Deputy Strickland knew about the "preference." Fourth, NBA "preferences" do not confine peace officer's efforts to enforce the law or to promote public safety. Fifth, as mentioned previously, the exhibit Mr. Ujiri attempts to incorporate via his Opposition is not appropriately considered.[6] The purported instruction thus cannot preclude dismissal or even legitimize amendment for several reasons, though amendment would be improper due to the videos and the lack of clearly established law regardless.

Mr. Ujiri proposes that unspecified other questions about other unspecified "instructions" that Deputy Strickland may have "fail[ed] to follow" or unspecified aspects of his "training" or other unspecified things that Deputy Strickland might have known might somehow tilt the reasonableness calculus in his favor. Opp., 13:13. However, he does not allege any such "facts" in

---

[6] *See Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6), a court *may not* look beyond the complaint to…[any] opposition to a defendant's motion to dismiss."). And, again, the exhibit would only further confirm Mr. Ujiri's claim's untenability, by confirming that "***only*** *people with the orange armband…[were to] be allowed onto the court.*" ECF-Doc. 44 at p. 9 (emphasis added). No exceptions were provided for people claiming to be team presidents. *See id.*

his counterclaims so they necessarily do not aid his notion of plausibility. They also do not aid his implicit request for amendment since he does not identify any such facts or offer any theoretical explanation as to how they supposedly might enable him to avoid qualified immunity, under either prong of the analysis. His best argument along these lines is that a trier of fact could conclude that it was unreasonable to believe Mr. Ujiri heard Deputy Strickland's repeated instructions. Opp., 13:6. However, this does not appear plausible from the videos. And, regardless, the point is moot since, under any plausible factual interpretation, other reasonable deputies also would have known that Mr. Ujiri was not showing credentials, and had forcefully brushed away Deputy Strickland's hand when he was trying to gently redirect Mr. Ujiri back to the AES official.[7] Mr. Ujiri's musings about facts unalleged thus could not preclude qualified immunity's dispositive effect based on either its first or second prongs. *Cf. Scott v. Cty. of San Bernardino*, 903 F.3d 943, 948 (9th Cir. 2018) ("[B]oth prongs must be satisfied…to overcome a qualified immunity defense.").

C.     Mr. Ujiri Has Not Met His Burden Of Showing That Every Single Reasonable Deputy Would Have Known "Beyond Debate" That "Any" Use Of Force Was Unconstitutional

Mr. Ujiri concedes he cannot meet his burden of identifying preexisting controlling authority in which an officer in essentially the same circumstances was deemed to have acted unconstitutionally. *See* Opp., 16:15-16. He nonetheless proposes that the general rule that the use of "any" force is unconstitutional if no force is needed suffices. *Id*. at 16:15-18. He is mistaken.

Courts understandably have recognized that "gratuitous and completely unnecessary acts of violence" violate the Fourth Amendment. *Fontana*, 262 F.3d at 860. However, that general rule can place the unconstitutionality of particular force beyond debate ***only*** in "rare" and "obvious" circumstances. *See D.C. v. Wesby*, 138 S.Ct. 577, 590 (2018).[8] And this is not one of them.

---

[7] And, of course, they also would have known that Mr. Ujiri disregarded Deputy Strickland pointing to the AES official, disregarded the AES official's request to check his credentials, and continued to barge past even when the AES official and Deputy Strickland tried to step in front of him to halt his progress toward the court. Exh. 1(a) at 1:06-1:07; Exh. 1(c) at 0:08-0:10.

[8] In connection with his argument on this point, Mr. Ujiri cites *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) for the notion that only in "*rare*" cases does qualified immunity apply before trial. Opp., 16:21-23. But *Santos* is wholly uninstructive because, among other things, it involved "only [a] pure excessive force issue and **not a qualified immunity claim**.") (Emphasis added).

---

*Strickland, et al., v. Ujiri, et al..*                                                       Case No. 20-cv-000981-YGR
Deputy Strickland's Reply Re Mot. To Dismiss          9

The rationale underlying the "rare" and "obvious" exception is that certain conduct is so obviously egregious and unconstitutional that every single reasonable officer would recognize it as such even though no precedent addressed the specific conduct previously. *See Motley v. Parks*, 432 F.3d 1072, 1089 (9th Cir. 2005) ("the qualified immunity defense will not succeed merely because the alleged behavior is so egregious that no previous case has found liability under those circumstances") (citing *McDonald v. Haskins*, 966 F.2d 292, 295 (7th Cir. 1992)). Thus, in *Motley*, a case on which Mr. Ujiri relies, the court recognized that, despite the absence of prior precedent on point, "[a]ny reasonable officer should have known that holding **an infant at gunpoint** constituted excessive force." *Motley*, 432 F3d at 1089 (emphasis added).[9]

By contrast, the "rare" and "obvious" exception is inapplicable here because the general prohibition against "gratuitous and completely unnecessary violence" would **not** have alerted "every" other reasonable deputy in the circumstances that the use of ***any*** force (ostensibly) was unconstitutional. *Cf. Graham*, 490 U.S. 386, 396 ("[T]he right to make an… investigatory stop necessarily carries with it the right to use some degree of physical coercion…to effect it.")  It also would not have alerted every other reasonable deputy that the two non-injurious pushes at issue were anything other than *de minimis*. *Cf. Fontana*, 262 F. 3d at 880 (explaining de minimis bodily intrusions are "constitutionally reasonable").  Further, Deputy Strickland's two non-injurious pushes do not remotely resemble the cases of "egregious" conduct where the "rare" and "obvious" exception has been deemed applicable. *Cf. Motley*, 432 F3d at 1089; *Fontana*, 262 F.3d. at 882 n. 8; *U.S. v. Lanier*, 520 U.S. 259, 271 (1997) (recognizing qualified immunity would not apply despite absence or prior case on point to "welfare officials…selling foster children into slavery").

Because the ostensible unconstitutionality of the specific use of force at issue does not "follow immediately" from the general prohibition against gratuitous violence, and the general

---

[9] The *Fontana* case on which Mr. Ujirii also relies did not address qualified immunity. *Fontana*, 262 F.3d. at 882 n. 8 ("neither of the parties briefed [qualified immunity so]…we do not address it here….") But it, unsurprisingly, shared its view in dicta that every reasonable officer would know without specific judicial confirmation that purposeful sexual predation including harassment and inappropriate sexual touching of a helpless, scared and handcuffed detainee who had just been in an accident was constitutionally impermissible. *Id*.

prohibition did not place "beyond debate" that the use of *any* force was unconstitutional, the inquiry ends. *See*, *e.g*., *Mullenix v. Luna*, 577 U.S. __, 136 S. Ct. 305, 308, 311 (2015).

### III. Mr. Ujiri's Attempts To Salvage His State Law Counterclaims Rely On Mischaracterizations Of Governing Law

To state a California law counterclaim, Mr. Ujiri was required to "allege facts demonstrating or excusing compliance with the claim presentation requirement." *State v. Sup. Court (Bodde)*, 32 Cal.App.4th 1234, 1241 (2004). Mr. Ujiri did not and cannot do so.

A.    <u>That Deputy Strickland Initiated This Lawsuit Does Not Exempt Mr. Ujiri From Compliance With The Claims Presentation Statues</u>

Mr. Ujiri's primary argument is that counterclaimants can sue "a public entity plaintiff" without submitted a tort claim beforehand if their counterclaims arises from "same transaction that forms the basis of the public entity's complaint." Opp., 18:11-12, citing *People ex rel. Dept. of Parks and Rec. v. West–A–Rama, Inc.*, 35 Cal.App.3d 786, 794 (1973). *West-A-Rama* was a case initiated by the State in which the defendant asserted a cross-claim based on the same contract on which the State based its claims. The court exempted the defendant/cross-complainant from the claims presentation statutes because: (1) it recognized the claims statutes' purpose is to permit public entities "to investigate promptly and to have an opportunity to settle without litigation,"[10] (2) it assumed the State had "made a full investigation of the respective rights and duties of the parties before initiating…suit on the [contract]" and "ha[d] already made the decision that the claim should not be settled, since [it] decided to litigate," and (3) it thus concluded "the purposes of the claims statutes [were] satisfied." *Id*. at 794. *West-A-Rama* thus is inapplicable here because

---

[10] *See also City of Stockton v. Sup. Ct*., 42 Cal.4th 730, 738 (2007) ("The purpose of the claims statutes is not to prevent surprise, but to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation."); *Barkley v. City of Blue Lake*, 47 Cal.App.4th 309, 316 (1996) (explaining that, by requiring timely notice, the claims statutes also give public entities the opportunity to investigate while evidence is fresh and consider the fiscal implications of potential liability).

it is limited to: (1) "contract" actions[11] (2) initiated by "a public *entity*" (not a public *employee*) (3) when, unlike here, the claims statutes' purposes are satisfied. *Id*.[12]

*Krainock* established that a similar exception potentially could apply in tort actions, but **only** when: (1) the case is "initiated by the public entity," (2) the cross-complaint does "not introduce an unrelated claim," and (3) it asserts no "claims for affirmative relief." *Krainock*, 216 Cal.App.3d at 1477-78.[13] The *Krainock* exception thus does not support Mr. Ujiri's exemption from the claims statutes for three reasons:

1. Alameda County did <u>not</u> initiate this lawsuit. Its employee did.[14] ECF Doc. 1.

2. Mr. Ujiri introduces an unrelated counterclaim – one based on Deputy Strickland's purported use of excessive force, rather than Mr. Ujiri's assault. ECF Doc. 43.

3. Mr. Ujiri does not assert a purely defensive claim. He instead seeks affirmative relief – nominal and punitive damages. *Id*.

Mr. Ujiri offers a related argument to the effect that the claims statutes' "*spirit and purpose have clearly been fulfilled*" because the County's sheriff's office investigated his assault on Deputy Strickland soon after it occurred. Opp., 19:5, *et seq*. But this argument is untenable because it disregards the *Krainock* prerequisites. Further, neither the sheriff's office's awareness of the

---

[11] *See Krainock v. Sup. Ct.*, 216 Cal.App.3d 1473, 1478 (1990) (noting the apparent "limitation" of *West-A-Rama* to "actions based on contract"); *id*. at 1477 n. 3 (explaining "*West-A-Rama*…did <u>not</u> apply its reasoning to tort actions") (emphasis added).

[12] Mr. Ujiri cites two other contract cases initiated by a public entities in which the *West-A-Rama* exception was reiterated. For the same reasons as *West-A-Rama*, they are inapplicable.

[13] *See also City of Stockton*, 42 Cal.4th 730 (reiterating *Krainock's* lesson that "a purely defensive cross-complaint [can be] asserted against a public entity despite the defendant's noncompliance with the claims act, when (1) the public entity initiated the litigation between it and the cross-complainant; (2) the cross-complaint arises from the same transaction or event on which the entity's claim is based; and (3) the cross-complaint asserts only defensive matter, without seeking affirmative relief.")

[14] Mr. Ujiri insists "courts in this state have found it 'manifestly unjust' to permit a public *employee* to throw the first stones" (i.e., sue first) and and then assert a "procedural…immunity [*sic*]" like that Deputy Strickland asserts. Opp., 2:3-6 (emphasis added). However, no California courts actually have so "found." Mr. Ujiri thus identifies none. *See id*.

---

incident nor Deputy Strickland's suit satisfied the claims statues' aims: (1) they did not give the County an opportunity to promptly investigate the notion that Deputy Strickland (rather than Mr. Ujiri) used improper force, (2) did not give the County an opportunity to settle the counterclaims "if appropriate without the expense of litigation," and (3) did not give the County an opportunity to take into account the fiscal implications of potential liability. *Cf. City of Stockton*, 42 Cal.4th at 738. Further, "[i]t is well-settled that claims statutes **must** be satisfied ***even in face of the public entity's actual knowledge of the circumstances surrounding the claim***." *Big Oak Flat-Groveland U.S.D. v. Sup. Ct.*, 21 Cal.App.5th 403, 413 (2018) (emphasis added).[15]

B.    The "Substantial Compliance" Doctrine Is Inapplicable

Mr. Ujiri also proposes that the "substantial compliance" doctrine excuses his noncompliance. Opp., 17:8-17. But it does not because it presupposes that a claimant attempted to comply but failed to do so in some technical manner that did not prevent the pertinent public officials from receiving the requisite notice. *Johnson v. City of Los Angeles*, 134 Cal.App.2d 600 (1955); *Stromberg, Inc. v. Los Angeles Flood Control Dist.*, 270 Cal.App.2d 759, 776 (1969) ("The doctrine of substantial compliance cannot be predicated on a complete failure to comply with the mandates of the claims statute.") Further, when, as here, "there is a complete failure to serve any responsible officer of the entity [in this case the Clerk of the Board of Supervisors], the doctrine does not apply." *Olson v. Manhattan Beach U.S.D.*, 17 Cal. App. 5th 1052, 1060 (2017).

C.    No Basis For "Estoppel" Exists

Mr. Ujiri also argues estoppel, insisting it was "thinly veiled…gamesmanship" for Deputy Strickland not to raise the defense sooner, including (somehow) in the months before this lawsuit was filed. Opp., 1:25-2:2. He complains that the issue was not raised in opposition to his leave to amend, and insists that Deputy Strickland "intentionally" waited to assert the defense until after the deadline for tort claim submission had passed. *Id*. at 17:18-22, 21:5-10.

---

[15] Mr. Ujiri also repeatedly mischaracterizes the issue as being whether Mr. Ujiri provided notice of his counterclaims *to Deputy Strickland personally* (rather than the County). *See*, *e.g.*, Opp., 1:3-5 ("Strickland…claims Mr. Ujiri [*sic*] should be barred for failing to notify ***him*** within six months of the encounter.") (emphasis added); *id*. at 1:20-22. Deputy Strickland had no idea that Mr. Ujiri planned to sue until just recently. But notice to Deputy Strickland would not excuse Mr. Ujiri's noncompliance regardless. *Krainock*, 216 Cal.App.3d at 1477-78.

Deputy Strickland did not assert the defense sooner because he did receive even imputed notice of Mr. Ujiri's noncompliance until his County-retained attorney obtained such information last month, after Mr. Ujiri had obtained leave to amend. But the defense's timing is irrelevant. Compliance is an *element* of the counterclaims, rather than an affirmative defense, so it can be first asserted even during trial. *See, e.g., DiCampli-Mintz v. County of Santa Clara*, 55 Cal.4th 983, 990 (2012). The notion of delay also is irrelevant because Mr. Ujiri identifies no actual or proposed factual allegations suggesting Deputy Strickland or any other County employee engaged in any sort of unconscionable conduct that unfairly deterred the submission of a tort claim.[16]

D.   Mr. Ujiri's Arguments That The Counterclaims Are Not For "Money Or Damages," And Related Arguments Are Legally Untenable

Mr. Ujiri argues the claims statutes do not apply because he seeks only nominal and punitive damages, rather than the "customarily recoverable" general or special damages. Opp., 19:20-20:4. His argument is untenable because, except in specifically delineated circumstances inapplicable here, the claims presentation requirement applies to "**all claims for money or damages**." Govt. Code §905 (emphasis added); *see also* Govt. Code §§945.5, 950.2. To reinterpret this unambiguous statutory language as meaning the claims presentation requirement applies to "all claims for money or damages – ***except*** *those for nominal or punitive damages*" would violate fundamental principles of statutory interpretation.[17]

Further, tacitly conceding his state law counterclaims actually are claims for "money or damages," Mr. Ujiri proposes to amend them such that they "do not seek monetary damages, and

---

[16] *Cf. Ortega v. Pajaro Valley Unified School Dist.*, 64 Cal. App. 4th 1023, 1048-49 (1998); *Munoz v. State*, 33 Cal.App.4th 1767, 1786 (1995) (finding no estoppel when State failed to prove requested records that might have aided malpractice claim investigation); *Petersen v. Vallejo*, 259 Cal.App.2d 757 (1968) (finding no estoppel absent reliance on entity conduct); *Stromberg, Inc.*, 270 Cal.App.2d at 776 ("defendant had no duty to plead noncompliance with the statute or to tell plaintiff to file a claim").

[17] *See, e.g., Nat. Assn. of Mfrs. v. Dept of Defense*, 138 S. Ct. 617, 631 (2018) (when statutory text is unambiguous, the inquiry ends). Thus, the functionally identical argument that "money or damages" does not include "incidental damages" has been expressly rejected. *TrafficSchoolOnline, Inc. v. Clarke*, 112 Cal.App.4th 736, 742 (2003).

therefore not within the gambit [*sic*] of the Act." Opp., 20:14-17. But such an amendment would not enable Mr. Ujiri to avoid his noncompliance's dispositive effect due to mootness and the lack of a justiciable controversy. *Cf. Feldman v. Boman*, 518 F.3d 637, 642 (9th Cir. 2008).

Mr. Ujiri argues public entities are immune to punitive damages. Opp., 3:3-5. But this is irrelevant. He argues whether punitive damages can be recovered and whether Deputy Ujiri was acting within the scope of his duties are issues that cannot be resolved on the pleadings. *Id*. at 20:5-8, citing *Austin v. Regents of Univ. of Cal*., 89 Cal.App.3d 354 (1979). But in *Austin*, the court only concluded: (1) that punitive damages were properly stricken as to UC Regents due to Government Code §818, and (2) that the plaintiff should be permitted to amend to augment allegations supporting punitive damages against a physician. *See id.* at 358-59. *Austin* thus did not address noncompliance with the claims presentation requirements or any course and scope issue. Further, Mr. Ujiri neither cites nor offers any factual allegations that would support his false and unalleged notion that Deputy Strickland was not acting as a County deputy. *Cf.* Counterclaims, ¶55;[18] *Twombly*, 550 U.S. at n. 8 ("It is [improper] to assume that [a claimant] can prove facts that it has not alleged….") Mr. Ujiri also argues that the claims presentation requirements do not apply to his Fourth Amendment claim. Opp., 20:8-12. But this is undisputed and irrelevant.

### IV. Conclusion

Largely by including video exhibits, Mr. Ujiri confirmed that his notion of unconstitutional force is not plausible. For the same reason, and through his admission that no prior controlling law on point exists, he confirms that the alleged unconstitutionality of the force was not "beyond debate." For both reasons, he also confirms that qualified immunity's dispositive effect is unavoidable, such that amendment should be disallowed.

Mr. Ujiri's admission that he did not submit a tort claim and his inability to identify any potentially viable excuse for noncompliance likewise necessitates dismissal of his state law counterclaims, and confirms amendment could not salvage them.

All counterclaims thus should be dismissed <u>without</u> leave to amend.

---

[18] Mr. Ujiri's attorneys know that Deputy Strickland was acting within the scope of his duties as a County deputy pursuant to an NBA-County contract. Rule 11 thus would preclude them from amending to offer any false contrary allegation.

Respectfully submitted:

Dated: October 26, 2020                    LAW OFFICES OF MATTHEW M. GRIGG


                                           */s/ Matthew M. Grigg*

                                           Matthew M. Grigg
                                           Co-Counsel for Counter-Defendant Alan Strickland