Matthew M. Grigg, SBN 195951
mmg@grigglegal.com
Law Offices of Matthew M. Grigg
1700 N. Broadway, Ste. 360
Walnut Creek, CA 94596
510-703-4576

Co-Counsel for Plaintiff/Counter-Defendant
Deputy Alan Strickland

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN STRICKLAND, et al., | Case No.: 20-cv-000981-YGR |
| Plaintiffs, | **PLAINTIFF/COUNTER-DEFENDANT DEPUTY ALAN STRICKLAND'S RESPONSE TO DEFENDANT/ COUNTERCLAIMANT MASAI UJIRI'S SUPPLEMENTAL BRIEFING ON MOTION TO DISMISS** |
| v. | |
| MASAI UJIRI, et al. | |
| Defendants, | |
| and Related Counteraction. | |

*Strickland, et al., v. Ujiri, et al..*
Strickland Response To Ujiri Supp. Brief

Case No. 20-cv-000981-YGR

## I. Introduction

In his supplemental brief, Mr. Ujiri argues that his noncompliance with the tort claim presentation statutes does not bar his state law counterclaims because:

1. the statutes are "specific to" (i.e., apply exclusively to) "public entities,"
2. intentional torts fall "outside" the scope of employment, and/or
3. equity "requires" the Court to disregard the statutes.

His arguments clash irreconcilably with governing law:

1. The Government Code and case law unambiguously confirm that the statutory claim presentation requirements do apply to claims against public employees.
2. Governing law also confirms that conduct does not fall outside employment's scope simply because it allegedly was "intentionally tortious."
3. Equity neither "requires" nor permits disregard of the claim presentation statutes, because it is not a legally "recognized" excuse for noncompliance.

## II. Mr. Ujiri's Insistence That The Tort Claim Presentation Requirement Applies Only To Public "Entities" Is Incorrect

Mr. Ujiri insists that his state law counterclaims "are against [Deputy] Strickland as an individual, not against ACSO" and that they thus "should not be barred by a procedural rule specific to public entities." Ujiri Suppl. Brief (USB) at 4:27-5:3. He is mistaken.

"Timely claim presentation is not merely a procedural requirement," it is a requisite "element" of a claim for relief. *Shirk v. Vista U.S.D.*, 42 Cal. 4th 201, 216 (2007). And the claims statutes are <u>not</u> "specific to public entities." Instead, "[i]t is well settled that a government claim must be filed with the public entity before a tort action is brought against the public entity ***or public employee.***" *Watson v. State of California*, 21 Cal.App.4th 836, 844 (1993) (emphasis added); *see also Karim-Panahi*, 839 F. 2d 621, 627 (9th Cir. 1988); Govt. Code §950.2.

Accepting Mr. Ujiri's argument would undermine the claims statutes by enabling litigants like him to sue public employees rather than entities, and thereby siphon away taxpayer dollars[1]

---

[1] When public employees are sued for allegedly tortious conduct occurring in the course of their employment, their public entity employers must pay for the costs of defense, judgments, and settlements. *See* Govt. Code §§825, *et seq.*, §§995, *et seq.*

without furthering any of the Tort Claims Act's aims. This was one of the precise evils the Act's drafters sought to prevent. *Briggs v. Lawrence*, 230 Cal.App.3d 605, 613 (1991).

Mr. Ujiri may be trying to imply that Deputy Strickland is something other than a "public employee" simply because he is a plaintiff. But the notion that "public employee" and "plaintiff" are mutually exclusive has neither logical nor legal merit. Mr. Ujiri thus, unsurprisingly, cites no law to support that curious notion.

### III. Ujiri's Scope Of Employment Argument Clashes Irreconcilably With Governing Law

The Court requested further briefing on "scope of employment" because it was concerned that Deputy Strickland's status as a public employee was "not plain from the face of the pleadings." ECF-Doc 51 at 1:17-26. As Deputy Strickland's supplemental brief demonstrated, however, scrutiny of Mr. Ujiri's allegations confirms Deputy Strickland *was* serving as a public employee at the time. Rather than dispute this, Mr. Ujiri reconfirms it. USB at 2:26, 4:26-27 (admitting Deputy Strickland's "job" during the incident was "deputy sheriff").

Mr. Ujiri nonetheless argues: (1) that employees acting "intentionally tortious" have been found to be acting outside their employment, and (2) that Deputy Strickland's conduct constituted "intentional torts outside the scope of his job as a deputy sheriff." USB at 4:21-27, citing *Wilson-Combs v. California Dept. of Consumer Affairs*, 555 F.Supp.2d 1110, 1119 (E.D. Cal. 2008). Mr. Ujiri thus argues that conduct falls outside employment's scope whenever it allegedly is intentionally tortious. *See id.*

Mr. Ujiri's argument is untenable because it is "well established" that "an employee's willful, malicious and even criminal torts may fall within the scope of his or her employment…even though the employer has not authorized the employee to commit crimes **or intentional torts**." *Xue Lu v. Powell*, 621 F.3d 944, 948 (9th Cir. 2010) (quoting *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal.4th 291, 296-97 (1995) (emphasis added).[2]

---

[2] S*ee also Perez v. Van Groningen & Sons, Inc.*, 41 Cal.3d 962, 969 (1986) ("[A]n employer can be liable for his employee's unauthorized intentional torts committed within the scope of employment despite lack of benefit to the employer."); *Carr v. Wm. C. Crowell Co.*, 28 Cal.2d 652 (1946) (finding general contractor's employee acted within scope of employment by intentionally throwing hammer at subcontractor, despite not furthering his employer's interests, because it was "sufficient" that the incident "resulted from a dispute arising out of the employment."); *Fields v.*

Indeed, under governing law, allegedly "intentionally tortious" acts fall within employment's scope whenever they have "a causal nexus to the employee's work." *Montague v. AMN Healthcare, Inc.*, 223 Cal.App.4th 1515, 1521 (2014), quoting *Lisa M.*, 12 Cal.4th at 296. "Courts have used various terms to describe this causal nexus: the incident leading to the injury must be an 'outgrowth' of the employment; the risk of tortious injury must be 'inherent in the working environment'; the risk must be 'typical' or 'broadly incidental' to the employer's business; the tort was 'a generally foreseeable consequence' of the employer's business." *Id.*

And, as demonstrated previously, Mr. Ujiri's counterclaims' allegations and exhibits, unequivocally confirm Deputy Strickland's conduct had a "causal nexus to" – i.e., was an "outgrowth of" – his work as "a deputy performing security" who "at all times relevant" was a County employee. *See* Counterclaims, ¶¶2, 14, 18, 37, 55; Exhs. 1(a)-1(c). In short, Mr. Ujiri's allegations and exhibits confirm that, while working as a deputy at a security checkpoint assisting with security, Deputy Strickland pushed Mr. Ujiri because – after Mr. Ujiri ignored the security official's instruction to show credentials, ignored Deputy Strickland's repeated instruction to show the official credentials, and ignored Deputy Strickland's gentle physical attempt to redirect him back to the official – Mr. Ujiri aggressively swatted Deputy Strickland's hand away and continued his attempt to barge past. *See id.*[3] Even if we were to indulge Mr. Ujiri's fiction that Deputy Strickland's efforts were "intentionally tortious," that, as a matter of law, thus still would not take his conduct outside his employment's scope – i.e., render it something other than "outgrowth of" his employment. *See, e.g., Xue Lu*, 621 F.3d at 948.

It thus is unsurprising that Mr. Ujiri neither alleges nor argues that Deputy Strickland's conduct was anything other than an "outgrowth of" his employment. Instead, he now only further

---

*Sanders*, 29 Cal.2d 834 (1947) (employee truck driver acted within scope of employment when beating motorist with wrench during dispute over employee's driving on a company job, notwithstanding any "personal element" in the altercation); *Mary M. v. City of Los Angeles,* 54 Cal.3d 202, 217-18 (1991) (finding it foreseeable that peace officers, on occasion, will engage in assaultive conduct, such that the risk of such tortious conduct should be considered "broadly incidental to the enterprise of law enforcement.")

[3] Though not appropriately considered at the motion to dismiss stage, we also know from the exhibit Mr. Ujiri improperly cited, that Mr. Ujiri was not even wearing the bright armband required for him to go onto the court at the time. ECF-Doc. 44 at p. 9.

confirms Deputy Strickland's conduct **was** an outgrowth of his employment. *See*, *e.g.*, USB at 4:21-27 (admitting Deputy Strickland's job was [serving] as a deputy sheriff performing security for Game 6"); USB at 5:11-12 (admitting that confronting behavior like his (Mr. Ujiri's) fell "***squarely within the scope*** *of what [peace officers like Deputy Strickland] are trained (and paid) to confront*.") (emphasis added); *id*. at 2:11-13. When, as here, the pertinent facts are undisputed (and further confirmed by video) and no conflicting inferences are possible, whether an employee acted in the scope of employment is a question of law that must be answered affirmatively. *See*, *e.g.*, *Perez*, 41 Cal.3d at 968.

### IV. Mr. Ujiri's "Equity" Arguments Are A Transparent And Misguided Attempt To Persuade The Court To Disregard Governing Law

Tacitly conceding no law supports his insistence that he is exempt from the claims statutes that govern all similarly situated litigants, Mr. Ujiri tries an "equity"-based emotional appeal:

- though he brazenly, repeatedly, and aggressively resisted efforts to check his credentials, he insists Deputy Strickland was the "first aggressor" and that he, by contrast, is the "innocent victim" (USB at 2:13, 3:13);
- though he alludes to the County's lien for reimbursement, he suggests that Deputy Strickland's claims raise the specter of "double recovery" (*id*. at 1:5); and
- though he assaulted a restrained, uniformed peace officer who was diligently attempting to enforce the law, promote security, and keep people safe, he insists that all claims against him are "frivolous" (*id*. at 5:7) – even though, as this motion demonstrates, he is the one pursuing frivolous claims, despite admittedly sustaining no injury whatsoever.

Mr. Ujiri similarly argues that, because Deputy Strickland supposedly assumed the risk that Mr. Ujiri would assault him, it would be "unjust" and "directly contravene well-established principles of equity" (supposedly) rooted in the firefighter's rule not to also allow Mr. Ujiri to continue to sue him. *Id*. at 5:14-15; *see also id.* at 1:8-10; 2:17-18.[4]

---

[4] As previously noted, the firefighter's rule cannot bar Deputy Strickland's claims at the 12(b)(6) stage because it requires evidentiary assessment. Mr. Ujiri thus appropriately does not contend otherwise. Further, the evidence would confirm that, for multiple reasons, including multiple of the reasons set forth in Civil Code §1714.9(a), the rule does not apply.

|  |  |  |
|---|---|---|
| 1 |  | Mr. Ujiri thus is urging the Court to disregard governing law based on ostensibly equitable arguments that have no factual or logical merit. But, even if we were to assume otherwise for argument's sake, his arguments still could not salvage his counterclaims because they have zero *legal* merit. Only legally "***recognized***" exemptions or excuses for noncompliance with the claim presentation statutes suffice. *Gong v. City of Rosemead*, 226 Cal. App. 4th 363, 374 (2014); *Chavez v. Sprague*, 209 Cal.App.2d 101, 107 (1962) ("The courts have consistently declined to hold that any exception (except estoppel[5]) should be read into the claims statutes.") And Mr. Ujiri's pseudo-equitable arguments are not a "recognized" excuse or exception. *See* Govt. Code §905 (listing recognized exceptions, none of which is applicable here). Mr. Ujiri thus identifies no law whatsoever that suggests otherwise. *See* USB at 5:1-16. |

## V. Conclusion

Mr. Ujiri is not exempt from the laws that govern all other litigants. His noncompliance with the claim presentation requirement is fatal to his state law counterclaims. His allegations, exhibits, and arguments confirm amendment would be a futile exercise. His state law counterclaims, like his federal one, thus should be dismissed without leave to amend.

Respectfully submitted:

Dated: December 3, 2020                                         LAW OFFICES OF MATTHEW M. GRIGG

/s/ *Matthew M. Grigg*
Matthew M. Grigg
Co-Counsel for Plaintiff/Counter-Defendant
Deputy Alan Strickland

---

[5] Mr. Ujiri has not alleged facts that might warrant estoppel's application because he has not alleged any affirmative conduct by any County employee, such as an intentional misrepresentation on which he relied, that prevented him from filing a tort claim. He argued in his Opposition that estoppel applies because Deputy Strickland's attorneys did not raise the defense earlier, but that identical argument has been expressly rejected. *Castaneda v. Dept. of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1065 ("[I]t defies logic that positions taken or not taken by an opposing party's attorney in litigation, which never mention any part of the [Tort Claims] Act, could give rise to estoppel under the Act.")