1
2
3
4
5
6
7

DAVID P. MASTAGNI (SBN 57721)
GRANT A. WINTER (SBN 266329)
BRETT D. BEYLER (SBN 319415)
**MASTAGNI HOLSTEDT, A.P.C.**
1912 I Street,
Sacramento, California 95811
Telephone: (916) 446-4692
Facsimile: (916) 447-4614
Email: bbeyler@mastagni.com
Attorneys for Plaintiffs, ALAN STRICKLAND
and KELLY STRICKLAND

8

*Additional counsel listed on last page*

9

10

11

### UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18
19
20

| | |
|---|---|
| ALAN STRICKLAND, an individual; and KELLY STRICKLAND, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>MASAI UJIRI, an individual; TORONTO RAPTORS, a business entity; MAPLE LEAF SPORTS & ENTERTAINMENT, a business entity; NATIONAL BASKETBALL ASSOCIATION; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 4:20-CV-00981-YGR<br><br>JOINT STATUS CONFERENCE REPORT<br><br><u>Case Management Conference</u><br><br>Date: January 25, 2021<br><br>Time: 2:00 P.M.<br><br>Location: Courtroom 1, Fourth Floor<br>Ronald V. Dellums Federal Building<br>1301 Clay Street, Oakland, CA 94612 |

21

22

### **JOINT STATUS REPORT**

23
24
25

Pursuant to the Court's Case Management Conference and Pretrial Order (ECF 30) and the Court's Standing Order (cand.uscourts.gov/ygrorders), and Civil Local Rule 16-9, the parties provide the following Joint Status Report.

26

    **1.    Facts**

27

        **a.  Deputy Alan Strickland & Kelly Strickland's Statement of Facts**

28

Following Game 6 of the June 13, 2019 NBA Finals, Masai Ujiri did not possess the gold arm

1    band necessary to go onto the Oracle Arena court. He repeatedly tried to bypass security to go onto

2    the court anyway. He has repeatedly referred to the credential he did possess as an "all access pass."

3    But, as is undisputed, that credential was not valid for post-game court access.

4          Due to the international event's high-profile, a coalition of city, county, and federal law

5    enforcement officials worked with NBA and private security officials to provide safety and security.

6    The NBA was responsible for coordinating the security plan. NBA Executive Vice President and

7    Chief Security Officer Jerome Pickett specifically advised security staff that: (1) all pertinent team

8    officials had been briefed about the credentialing plan, and that (2) if someone lacked proper

9    credentials, they would not be allowed on the court, even if they were a team owner. Mr. Pickett

10   further advised, "It doesn't matter who they are, who they say they are, you tell them Jerome Pickett

11   says they are not going on the court without proper credentials."

12         One of the officers the Alameda County Sheriff's Office (ACSO) assigned to work the event

13   was Deputy Alan Strickland. As Mr. Ujiri's allegations correctly confirm, Deputy Strickland was at

14   all times serving as an ACSO employee. Deputy Strickland initially swept the arena for bombs with

15   his canine partner. As the game was ending, he was posted courtside in full uniform, along with a

16   private security official (Mr. Silva).

17         Deputy Strickland saw Mr. Ujiri approach the checkpoint. He pointed to him, to alert Mr.

18   Silva to his approach. Mr. Silva stepped to his right to try to halt Mr. Ujiri's progress toward the

19   court. But Mr. Ujiri did not stop. Mr. Silva asked to see Mr. Ujiri's credentials. But Mr. Ujiri ignored

20   him.

21         After ignoring Mr. Silva, Mr. Ujiri pulled an invalid credential from his jacket's inside pocket.

22   Deputy Strickland pointed at Mr. Silva while instructing Mr. Ujiri to "Show him! Show him!" – i.e.,

23   show Mr. Silva the credential. But Mr. Ujiri ignored him too.

24         As Mr. Ujiri tried to barge his way through, he walked into Deputy Strickland's outstretched

25   hand. Deputy Strickland gently grasped his elbow to try to redirect him back to Mr. Silva. But Mr.

26   Ujiri resisted that as well, despite knowing Deputy Strickland was a peace officer. He aggressively

27   brushed Deputy Strickland's hand away as part of his attempt to bypass security.

28

- 2 –

1
2
3
4

Shocked by Mr. Ujiri's brazen and repeated attempts to bypass security, and his aggressive resistance, Deputy Strickland pushed Mr. Ujiri in the chest to halt his advance, and ordered him to "back the fuck up." (Note: Resisting or obstructing an officer's attempt to discharge his duties is a crime. *See*, *e.g*., Penal Code §148(a)(1).)

5
6
7
8

But Mr. Ujiri still did not stop to show or confer about his (invalid) credential. He said he was the Raptors' president, and brazenly again tried to barge through. Deputy Strickland thus pushed him back again. Deputy Strickland's open-hand pushes to Mr. Ujiri's chest were calculated to cause no injury. Thus, as Mr. Ujiri admits, he sustained no injury whatsoever.

9
10
11

Mr. Ujiri nonetheless then attacked Deputy Strickland. He lashed out with both hands, forcefully striking Deputy Strickland in the upper chest and jaw area, and knocking him back several feet. Mr. Ujiri's assault caused serious and lasting injuries, including cognitive and TMJ problems.

12
13

After assaulting Deputy Strickland, Mr. Ujiri was able to slip into the crowd and make his way onto the court. He mouthed "Fuck you!" at Deputy Strickland, and then proceeded to celebrate.

14
15
16
17

The NBA later represented that Mr. Ujiri did not have the armband necessary for post-game court access. A purple trophy credential would have allowed court access once a stage had been erected, but Mr. Ujiri also lacked that credential.

18
19
20
21
22
23
24
25
26
27

Below, Mr. Ujiri curiously argues that he necessarily must not have committed a crime because he was not prosecuted. However, that one has managed to evade prosecution does not mean one has not acted criminally. And the video evidence confirms Mr. Ujiri resisted and obstructed an officer attempting to perform his duties. Mr. Ujiri also curiously protests the mere mention of the term "all access pass." But the name used to describe the pass is irrelevant. What matters is that – as is undisputed – it was invalid for post-game court access. Mr. Ujiri/Raptors/MLS&E also argue many of the above facts above are "inaccurat[e]," "false," "overblown," "immaterial," "hyperbol[e]," and "misrepresentations." However, the defendants' rhetorical insistence clashes irreconcilably with the evidence, including the video. Thus, they tellingly spend more time authoring vague disparagements than it would take to identify anything legitimately inaccurate.

28

**b. Masai Ujiri & Toronto Raptors/Maple Leaf Sports & Entertainment's**

1

### (MLS&E) Statement of Facts

2

The Court is by now familiar with the facts of this simple dispute, and Defendants Masai

3

Ujiri and Toronto Raptors/Maple Leaf Sports & Entertainment's ("Masai Ujiri and

4

Raptors/MLS&E") decline to engage in argumentative back-and-forth with Plaintiffs here. Suffice

5

to say, Plaintiffs' recitation of the facts is replete with factual inaccuracies and false representations.

6

Fortunately, the brief encounter forming the basis for this case has been captured by video footage,

7

which the Court has seen.  *See* Dkt. 43.

8

This case centers upon an 11-second encounter between two men at the end of a crowded

9

basketball game. Plaintiff Strickland was pushed in the chest, not punched in the face. He was the

10

first aggressor. He was not seriously injured, and any harm he claims to have endured was certainly

11

not caused by Mr. Ujiri. Similarly, Kelly Strickland's claim for loss of consortium purportedly

12

predicated on the two shoves endured by her husband is devoid of merit.

13

On June 13, 2019, the Raptors defeated the Golden State Warriors in Game 6 of the NBA

14

Finals and were crowned NBA champions at Oracle Arena in Oakland, California. Masai Ujiri,

15

President of Basketball Operations for the Toronto Raptors, watched the final moments of Game 6

16

from the tunnel at Oracle Arena that leads to the players' locker room. He then walked from the

17

tunnel out to the arena floor and proceeded towards the court where he expected to meet the

18

Raptors' players and coaches.

19

As Mr. Ujiri attempted to make his way onto the court to join his team and fulfill his duties

20

as Raptors' President, he encountered Plaintiff Alan Strickland who was providing security at the

21

game. As Mr. Ujiri attempted to enter the court, Mr. Strickland assaulted him, forcefully shoving

22

him back once and then twice. The series of events is confirmed by Strickland's body camera

23

footage, which portray Strickland's conduct as excessive and unreasonable. Mr. Ujiri returned a

24

shove to Mr. Strickland's chest only after Mr. Strickland shoved him the second time. Other than

25

the shoves, the two men did not have any further physical contact. Mr. Ujiri was eventually

26

escorted onto the court where he joined his team, accepted the championship trophy, and gave a

27

live on camera interview.

28

1   Two of Plaintiffs' misstated contentions are worth addressing. First, Mr. Ujiri's use of the term "all

2   access pass" to describe his credential is a term of art, defined and described in Plaintiffs' own

3   document production. Second, Mr. Ujiri did not commit a crime. The Oakland Police Department

4   and the Alameda County District Attorney's Office conducted a fulsome investigation and

5   determined that no criminal charges would be filed against Mr. Ujiri. Plaintiffs' hyperbolic

6   recitations are overblown, factually inaccurate, and distract from the actual material issues in this

7   case.

8   **c.   The NBA's Statement of Facts**

9   This case arises out of an altercation that occurred after the conclusion of Game 6 of the

10  2019 NBA Finals between Plaintiff Alan Strickland (who was providing security at the game) and

11  Defendant Masai Ujiri (who is the President of the Toronto Raptors organization). The NBA denies

12  Plaintiffs' claims and denies there is a valid basis for holding the NBA liable as a result of the

13  altercation between the two individuals involved. The NBA also denies that it breached any legal

14  duty owed to Plaintiff based on vaguely alleged flaws in the NBA's security policies or procedures.

15  The NBA disputes many of the factual contentions set forth above regarding Plaintiffs' recitation of

16  the facts related to the incident, including but not limited to Plaintiffs' incomplete and inaccurate

17  recitation of the directions that were provided to local law enforcement related to on-court security

18  following the conclusion of Game 6.

19  **2.   Legal Issues**

20  **a.   Deputy Strickland & Kelly Strickland's Perspectives**

21  Mr. Ujiri previously seemed to argue that assaulting Deputy Strickland was not tortious

22  because: (a) Deputy Strickland may have been moonlighting for a private company at the time such

23  that (b) Mr. Ujiri was entitled to ignore his instructions and use "self-defense." This argument is

24  frivolous. Deputy Strickland *was* working as an ACSO officer at the time – as Mr. Ujiri's own

25  allegations confirm. And one has no right to assault an officer in response to lawful law enforcement

26  efforts like Deputy Strickland's, and/or to mischaracterize the assault as "self-defense."

27  Plaintiffs contend that the other defendants are liable for their tortious conduct in connection

28

1   with their failures to take reasonable measures to prevent the assault by Mr. Ujiri and/or their tortious

2   handling of security.

3   　　　Despite the absence of any tortious conduct by Deputy Strickland, and despite sustaining no

4   injury whatsoever, Mr. Ujiri asserted counterclaims against Deputy Strickland. The parties are

5   awaiting a ruling on Deputy Strickland's motion to dismiss. As demonstrated in more detail in the

6   motion:

7   　　• The Tort Claims Act requires dismissal of Mr. Ujiri's state law counterclaims because Mr.

8   　　　Ujiri's allegations and exhibits confirm that: (a) Deputy Strickland was a public employee

9   　　　acting within the course and scope of his employment, and (b) yet Mr. Ujiri never submitted

10  　　　the mandatory tort claim to Deputy Strickland's public entity-employer before suing.

11  　　• Qualified immunity requires dismissal of Mr. Ujiri's Fourth Amendment claim because: (a)

12  　　　Mr. Ujiri's allegations and video exhibits confirm the stark absence of excessive force, and/or

13  　　　(b) Mr. Ujiri has proven himself unable to identify preexisting law that "squarely governs"

14  　　　the particularized facts here and that would have placed "beyond debate" for "every" other

15  　　　reasonable   officer   in   Deputy   Strickland's   position   his   conduct's   purported

16  　　　unconstitutionality.

17  Defendants, below, allude to a "mischaracterized" sequence of events. But they tellingly do not

18  identify anything actually inaccurate.

19  

20  　　　　　　　　　**b.  Masai Ujiri and Toronto Raptors/MLS&E's Perspectives**

21  　　　Defendants decline to respond to Plaintiffs' unsolicited supplemental briefing on a motion

22  to dismiss that is currently under submission with the Court. In any event, Plaintiffs' arguments are

23  predicated on a mischaracterized sequence of events.

24  　　　Defendants Masai Ujiri and Raptors/MLS&E contend Mr. Ujiri was acting in self-defense

25  when he pushed Plaintiff Alan Strickland. Mr. Strickland, as the first aggressor, shoved Mr. Ujiri

26  twice, which was excessive force under all attendant facts and circumstances.

27  　　　To the extent legal issues arise in adjudicating this simple matter, Defendants Masai Ujiri

28  and Raptors/MLS&E will respond to them appropriately through a duly-noticed motion, rather than

- 6 –

1   in a Joint Status Conference Report.

2   ### c.  The NBA's Perspectives

3   The NBA denies that it may be held vicariously liable for Mr. Ujiri's conduct, since it does

4   not employ Mr. Ujiri. Plaintiffs have declined to explain the basis on which they have alleged that

5   Mr. Ujiri is an employee of the NBA. With respect to the claim for direct negligence, the basis of

6   which is unclear, the NBA denies that it breached any legal obligation that it may have owed to

7   Plaintiffs.

8   ### 3.  Motions

9   ### a.  Plaintiffs' Statement

10  ### i.  Motion To Compel Discovery From Ujiri/Raptors

11  Plaintiffs anticipate filing a joint discovery dispute brief this week regarding problems with

12  Defendants Ujiri and Raptors/MLS&E's discovery responses. In short:

13  Mr. Ujiri and Raptors/MLS&E have not produced any communications pertaining to the

14  incident, despite being asked to do so back in May of last year.

15  They also failed to produce a privilege log until November, more than four months after

16  initially serving discovery responses. Further, following months of meeting and conferring, they

17  produced a deficient, one-page privilege log. In it, they include a footnote stating "[a]ll

18  correspondence between Cotchett, Pitre & McCarthy, LLP and defendants Masai Ujiri and

19  Raptors/MLSE is subject to attorney client privilege and will not be produced." However, they

20  itemize no such correspondence in their privilege log or other information sufficient to preserve any

21  such alleged privilege.

22

23  Mr. Ujiri and Raptors/MLS&E also have refused to respond to requests to admission in

24  accordance with the federal rules. They disregard the permissible options of admitting, denying, or

25  expressing an inability to admit or deny. They apparently do so to evade the implications of

26  appropriate admissions and/or to attempt to avoid post-trial costs stemming from unfounded denials.

27  Mr. Ujiri also has not produced the credential he possessed during the incident, despite being

28  asked to do so back in May 2020, and despite representations that it would be produced. The latest

- 7 –

excuse is that no one can access the building where the credential now is stored.

*ii.    Motion To Compel Third-Party Discovery*

Plaintiffs have served three subpoenas on non-parties. None of these parties has timely responded. Plaintiffs have filed two motions to compel subpoena compliance thus far. One motion, regarding a subpoena to the OPD, was filed in this Court. The Court granted that unopposed motion. OPD finally completed production on December 21, 2020.

Plaintiffs also moved to compel non-party AEG to respond to a subpoena. That subpoena was filed in the Central District. The court still has not set a hearing date for that motion, which was filed on November 13, 2020.

Plaintiffs recently learned about ASM Global, an off-shoot of AEG, that now reportedly has all the original video of the incident. ASM Global's date of subpoena compliance was December 21, 2020. Despite repeated attempts to communicate with ASM Global, and inquiries about the status of the production, no documents have been produced. Plaintiffs thus anticipate soon filing a motion to compel subpoena compliance shortly.

*iii.    Motion To Continue*

Plaintiffs anticipate moving to continue the trial and related discovery deadlines. This continuance is warranted to due to COVID-19 delays, and delays caused by discovery disputes with the parties and non-parties.

*iv.    Summary Judgment Motion*

If any of Mr. Ujiri's counterclaims somehow survived the motion to dismiss, Deputy Strickland would seek to have them adjudicated summarily, as they are both substantively and procedurally untenable.

**b.    Masai Ujiri and Toronto Raptors/MLS&E's Statement**

Preliminarily, Defendants Masai Ujiri and Raptors/MLS&E will respond in detail to Plaintiffs' meritless discovery issues before Magistrate Judge Ryu, to whom all such discovery disputes have been assigned.

1

2      Defendants Masai Ujiri and Raptors/MLS&E view Plaintiffs' "discovery disputes" as an

3   effort to manufacture a justification for delay and to increase the scope and cost of this case.

4   Defendants will strongly oppose any motion for a trial continuance filed by Plaintiffs, and their

5   efforts to unnecessarily overcomplicate the proceedings underpinning this uncomplicated matter.

    There is absolutely no basis for a trial continuance.

6
       Defendants Masai Ujiri and Raptors/MLS&E anticipate they will file a motion for summary
7
    judgment as they believe the undisputed facts will show Mr. Ujiri did not injure Plaintiff Alan
8
    Strickland and that Mr. Ujiri acted in self-defense against Plaintiff Alan Strickland's unprovoked
9
    assault and excessive use of force.  Defendants Masai Ujiri and Raptors/MLS&E also anticipating
10
    filing a *Pitchess* motion to obtain Mr. Strickland's personnel file.
11
       **The NBA's Statement**
12
       The NBA anticipates that it will file a motion for summary judgment, including on the issue
13
    of whether it has vicarious liability for any of Mr. Ujiri's conduct.
14
       **4.      Evidence Preservation.**
15
       The parties certify that they have reviewed the Guidelines Relating to the Discovery of
16
    Electronically Stored Information ("ESI Guidelines"), and confirm that they have met and
17
    conferred pursuant to Federal Rules of Civil Procedure 26(f) regarding reasonable and
18
    proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this
19
    action. (*See* ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.)
20
       **5.      Discovery.**
21
          **a.  Discovery Taken to Date.**
22
             **i.  Plaintiffs.**
23
       Interrogatories, Set One were served on Masai Ujiri, Toronto Raptors, Maple Leaf Sports &
24
    Entertainment, and the NBA on May 13, 2020.
25
       Request for Production of Documents, Set One were served on Masai Ujiri, Toronto
26
    Raptors, Maple Leaf Sports & Entertainment, and the NBA on May 13, 2020.
27
       Request for Admission, Set One were served on Masai Ujiri on May 13, 2020.
28

1

2

3

4

5

6

7

A Subpoena was issued on August 17, 2020, and personally served on Oakland Police Department ("OPD") on August 20, 2020 with a production date for September 7, 2020. OPD never responded or complied with the subpoena on or before the production date. After multiple attempts to meet and confer and inquire into the status of these records, Plaintiff filed a motion to compel subpoena compliance on November 13, 2020 with this Court. The Court granted plaintiffs' motion to compel on December 11, 2020. OPD completed producing all responsive records on December 21, 2020.

8

9

10

11

12

13

A subpoena was issued on August 17, 2020, and personally served on Anschutz Entertainment Group ("AEG") on August 21, 2020 with a production date for September 7, 2020. AEG never responded or complied with the subpoena on or before the production date. After multiple attempts to meet and confer and inquire into the status of these records, Plaintiff filed a motion to compel subpoena compliance on November 13, 2020 in the U.S. Court for the Central District of California. The Motion is still pending and awaiting a hearing date.

14

15

16

17

A subpoena was issued on August 17, 2020, and personally served on Alameda County Sheriff's Office ("ACSO") on August 20, 2020 with a production date for September 7, 2020. ACSO produced all responsive records on or before the production date.

18

19

20

21

22

23

A subpoena was issued on November 20, 2020, and personally served on ASM Global on December 2, 2020 with a production date for December 21, 2020. ASM Global never responded or complied with the subpoena on or before the production date. To date, ASM Global has not complied with the subpoena request nor contacted counsel regarding production. Plaintiff will be filing a Motion to Compel subpoena compliance with the U.S. Court of the Eastern District of Pennsylvania shortly.

24

25

Interrogatories, Set Two were served on Masai Ujiri, Toronto Raptors, Maple Leaf Sports & Entertainment, and the NBA on December 31, 2020.

26

27

Request for Production of Documents, Set Two were served on Masai Ujiri, Toronto Raptors, Maple Leaf Sports & Entertainment, and the NBA on December 31, 2020.

28

Request for Admission, Set Two were served on Masai Ujiri on May 13, 2020.

- 10 –

1

Plaintiffs noticed seven depositions for February and March 2021.

2

### ii. Masai Ujiri and Raptors/MLS&E

3

On June 20, 2020 Defendants Masai Ujiri and Raptors/MLS&E served one set of Requests

4

for Admission, Requests for Production of Documents, and Special Interrogatories on Plaintiffs

5

Alan and Kelly Strickland.  On June 18, 2020, Masai Ujiri and Raptors/MLS&E propounded seven

6

supboenas on non-parties: the Alameda County District Attorneys' Office, Alameda County

7

Sheriff's Office, Oakland Police Department, San Mateo District Attorneys' Office, San Mateo

8

Police Department, and Eden Medical Center.

9

### iii. The NBA.

10

Plaintiffs served document requests and interrogatories on the NBA in May 2020.  The

11

NBA responded to those requests in June 2020 and thereafter met and conferred with Plaintiffs

12

about its responses.  Plaintiff served six additional document requests and seven additional

13

interrogatories on December 31, 2020, and the NBA's responses are not yet due.

14

**6.     Settlement and ADR.**

15

On August 11, 2020, the parties were unsuccessful in mediating this matter.

16

**7.     Other References.**

17

None at this time.

18

**8.     Narrowing of Issues.**

19

At this juncture, the parties are unaware of any issues that can be narrowed prior to the close

20

of discovery.

21

**9.     Expedited Trial Procedure.**

22

This is not a proper case for expedited trial procedures, nor is one being requested at this

23

time.

24

**10.     Scheduling.**

25

**a.   Plaintiffs / Cross-Defendant**

26

Deputy Strickland and Kelly Strickland have proposed continuing the trial and discovery

27

deadlines/cut-offs. During a joint counsel conference call held on January 13, 2021, counsel for

28

- 11 –

1    Defendants Masai Ujiri, Toronto Raptors, and Maple Leaf Sports & Entertainment, and counsel for

2    the NBA refused to stipulate to a trial continuance.

3    Plaintiffs intend to move to continue the trial and related discovery dates. This continuance

4    is warranted to due to COVID-19 delays, delays caused by discovery disputes with the parties, and

5    the pending motion to dismiss. They propose continuing the trial and all discovery-related

6    dates/deadlines by six (6) months, and to have that continuance run from the date of the Court's

7    ruling on cross-defendant's motion to dismiss.

8    b. **Masai Ujiri and Raptors/MLS&E**

9    Masai Ujiri and Raptors/MLS&E believe a trial continuance would be wholly inappropriate,

10   a waste of judicial and party resources, and untethered to the actual needs of this case. Plaintiffs

11   filed their complaint on February 7, 2020, nearly a year ago.  Fact discovery ends on April 2, 2020,

12   over two months away.  This case involves an 11-second encounter, captured by dozens of videos

13   and observed by known eyewitnesses.  If Plaintiffs do not have sufficient discovery by now (or by

14   April 2), they never will. Continuing trial would serve no purpose other than to unnecessarily

15   increase the scope of discovery and corresponding motion practice.

16   **c. The NBA**

17   The NBA believes that this case, which arises out of a brief incident that lasted only seconds

18   and was captured on video, should be brought to a conclusion on a case management schedule that

19   is commensurate with the scope of the dispute—and without extended delays to accommodate

20   requests for burdensome, expensive, and protracted discovery that is disproportionate to the claims

21   presented.  The NBA will respond to the details of any request for a continuance of case deadlines

22   in connection with the motion that Plaintiffs have indicated they may file.

23

24   **11.    Trial.**

25   The parties have requested a jury trial, which the parties anticipate will last 5 to 10 days.

26   **12.    Disclosure of Non-Party Interested Entities or Persons.**

27   Defendants have all complied and served their respective Certificates of Interested Entities

28   or Parties pursuant to Federal Rules of Civil Procedure, Rule 7.1, and Local Rules 7.1-1 and 3-15.

- 12 –

1    **13.    Professional Conduct.**

2        All attorneys for the parties have reviewed the Guidelines for Professional Conduct for the

3    Northern District of California.

4    Dated: January 18, 2021                    Respectfully submitted,

5                                               **MASTAGNI HOLSTEDT, A.P.C.**

6                                       By:     /s/ BRETT D. BEYLER
                                               David P. Mastagni
7                                              Grant A. Winter
                                               Brett D. Beyler
8
                                               Attorneys for Plaintiffs
9
     Dated: January 18, 2021                    **CONRAD & METLITZKY, LLP**
10
                                       By:     /s/ COURTNEY C. AASEN
11                                             Mark R. Conrad
                                               Courtney C. Aasen
12                                             Attorneys for Defendant National Basketball
                                               Association
13

14                                              **COTCHETT, PITRE & McCARTHY, LLP**
     Dated: January 18, 2021                    By:/s/ TAMARAH PREVOST
15                                             Joseph W. Cotchett
                                               Emanuel B. Townsend
16                                             Tamarah Prevost
                                               Attorneys for Defendants Masai Ujiri, Toronto
17                                             Raptors, and Maple Leaf Sports & Entertainment

18

19   Dated: January 18, 2021                    Respectfully submitted,

20                                              **LAW OFFICES OF MATTHEW M. GRIGG**

21                                              /s/ Matthew M. Grigg

22                                             Counsel for Counter-Defendant
                                               Deputy Alan Strickland
23

24

25

26

27

28

1

**Additional Counsel**

2

3     **COTCHETT, PITRE & McCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)

4     Emanuel B. Townsend (SBN 305373)
Tamarah Prevost (313422)

5     840 Malcolm Road, Suite 200
Burlingame, CA 94010

6     Telephone: (650) 697-6000

7     Facsimile: (650) 697-0577
Email: jcotchett@cpmlegal.com; etownsend@cpmlegal.com; tprevost@cpmlegal.com

8     Attorneys for Defendants, MASAI UJIRI, TORONTO RAPTORS,
and MAPLE LEAF SPORTS & ENTERTAINMENT

9

10     Mark R. Conrad (SBN 255667)
Courtney C. Aasen (SBN 307404)

11     **CONRAD | METLITZKY | KANE LLP**
Four Embarcadero Center, Suite 1400

12     San Francisco, CA 94111
Telephone: (415) 343-7100

13     Facsimile: (415) 343-7101

14     Email: mconrad@conmetkane.com; caasen@conmetkane.com

15     Attorneys for Defendant,
NATIONAL BASKETBALL ASSOCIATION

16

17     MATTHEW M. GRIGG (SBN 195951)
**LAW OFFICES OF MATTHEW M. GRIGG**

18     1700 N. Broadway, Ste. 360
Walnut Creek, CA 94596

19     Telephone: (510) 703-4576
Email: mmg@grigglegal.com

20     Co-Counsel for Plaintiff/Counter-Defendant Alan Strickland

21

22

23

24

25

26

27

28

- 14 –